**TENET HEALTHCARE LTD., d/b/a Park Plaza Hospital, Appellant,**

v.

**Mary COOPER, Appellee.**

No. 14–96–01259–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 15, 1998.

Michael W. Fox, Cris Andrew Schere, Laura E. Spatz, San Antonio, Alene R. Levy, Houston, for appellant.

Lionel M. Schooler, Dorothy Blefeld, Susan M. Schwager, N. Terry Adams, Jr., Houston, for appellee.

Before HUDSON, FOWLER and SAM ROBERTSON, JJ.*

## OPINION

SAM ROBERTSON, Justice (Assigned).

This interlocutory appeal is from the trial court's order denying appellant's motion to stay litigation and compel arbitration. We affirm.

When appellee, Cooper, began employment with appellant, Tenet, in 1980, she was not asked to, nor did she sign any arbitration agreement. In April, 1993, Park Plaza distributed its "Employment Handbook" to its employees, including appellee Cooper. The preface to the handbook provided:

> We are more effective members of our company if we clearly understand Policies related to employment. The policies contained herein have been established in the interest of organizational integrity and out of concern for work-life situations. These policies are not exclusive but are meant to serve as guidelines, since it is impossible to cover all situations in any publication. The policies contained herein replace and supersede all previously published handbooks and AMI policies. It is not intended to constitute a legal contract with any employee or group of employees because that can only occur with a written agreement executed by a facility Executive Director and AMI Senior Executive Officer. As regards the Fair Treatment Procedure, AMI is committed to accepting the obligation to support and assure access to the binding arbitration procedure for solving disputes, if necessary. Situations may arise from time to time which, in the Company's judgement require procedures or actions different than those described

* The Honorable Sam Robertson sitting by assignment.

in this document or other written policies. Since the Company maintains the sole and exclusive discretion to exercise the customary functions of the management in all areas of employment and Company operations, the judgement of management shall be controlling in all such situations. Employees have access to a grievance procedure described in this document that affords the opportunity to have any employment related disputes submitted to binding arbitration.

The last page of the handbook was labeled "Acknowledgment Form" and provided:

IMPORTANT!

Acknowledgment Form

Upon receipt, please sign and present the acknowledgment form of this handbook to the Human Resources Department.

I have received my copy of the AMI Employee Handbook which outlines my privileges and obligations as an employee, and provides a summary plan of descriptions for the AMI benefits plans. I understand that it is my responsibility to familiarize myself with the information in this document and I understand that it contains the general human resources policies of the company.

I understand also that this handbook highlights company policies, practices, and benefits for my personal education to help me to gain a working knowledge of the philosophy and general policies of AMI. No written agreement concerning employment terms or conditions is valid unless signed by a facility executive director, and senior officer of AMI, and no written statement or agreement in this handbook concerning employment is binding, since provisions are subject to change, and as all AMI employees are employed on an "at will" basis. No verbal agreement may be made regarding employment and benefit policies. No written agreement regarding employment will be honored unless approved in writing by Executive Director and above. Circumstances will obviously require that

the policies, practices, and benefits described in the handbook change from time to time. The company reserves the right to amend, supplement, or rescind any provisions of this handbook as it deems appropriate in its sole and absolute discretion.

I understand AMI makes available arbitration for resolution of grievances. I also understand that as a condition of employment and continued employment, I agree to submit any complaints to the published process and agree to abide by and accept the final decision of the arbitration panel as ultimate resolution of my complaint(s) for any and all events that arise out of employment or termination of employment.

If a state has established an arbitration procedure, AMI and the employee will comply with the statute requirement.

(Signature required as a condition of employment for new employees)

Appellee, Cooper, signed the form. In September, 1995, Cooper was discharged and this suit for wrongful discharge resulted. Appellant sought enforcement of the arbitration agreement which the trial court denied without stating any reason therefor. Hence, this appeal. However, realizing that in the event the federal act [1] controlled and appellant could not complain by appeal,[2] appellant has twice sought relief by mandamus in this court, and on each occasion leave to file has been denied without assigning a reason.

In the trial court, Cooper opposed the motion to stay litigation on multiple grounds, one of which was that the alleged arbitration agreement was not enforceable as a contract because it was not supported by consideration. This, in our view, is the controlling issue and we find it unnecessary to address the other grounds upon which Cooper attacked the purported arbitration agreement.

The provisions of both the federal arbitration act and the state arbitration act [3] are identical in providing that a contract to submit to arbitration is valid and enforceable

---

1. Federal Arbitration Act, 9 U.S.C. § 1–16.

2. *See Anglin v. Tipps,* 842 S.W.2d 266 (Tex.1992).

3. Tex.Rev.Civ. Prac. & Rem.Code § 171.001 (Vernon's Supp.1996).

"save upon such grounds as exist at law or in equity for the revocation of any contract."

Appellant contends that our first duty is to determine which act controls because that decision "aids the court in identifying relevant precedent." As authority appellant relies upon *Palm Harbor Homes, Inc. v. McCoy,* 944 S.W.2d 716 (Tex.App.—Fort Worth 1997, orig. proceeding); *BWI Companies, Inc. v. Kurtenbach,* 910 S.W.2d 620 (Tex.App.—Austin 1995, orig. proceeding); and *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.,* 896 S.W.2d 352 (Tex. App.—Houston [1st Dist.] 1995, no writ). The status of each of those cases before the courts of appeal distinguish them from this case. *Palm Harbor* was a mandamus action and both *BWI Companies* and *Belmont Constructors* involved a consolidated mandamus action and an interlocutory appeal. Therefore, the controlling issue in each case was which act controlled. This case is not in the same procedural setting—we are here concerned only with the interlocutory appeal since relief by mandamus has twice previously been turned down.

Appellee, on the other hand, contends our first duty is to determine whether there is an enforceable contract and then address the issue of which act controls. She does not cite controlling precedent for such position and we have not found any. While logic seems to dictate the correctness of this approach,[4] we do not believe it is essential to decide the issue in this case.

■ Arbitration is a creature of contract and a clause requiring arbitration is interpreted under contract principles. *See Belmont v. Lyondell Petrochemical,* 896 S.W.2d at 356–57 (noting the presumption in favor of arbitration, but recognizing "a court may not order arbitration in the absence of such an agreement"); *Kline v. O'Quinn,* 874 S.W.2d 776 (Tex.App.—Houston [14th Dist.] 1994, writ denied, *cert. denied* 515 U.S. 1142, 115 S.Ct. 2579, 132 L.Ed.2d 829) (whether the parties agreement imposes a duty to arbi-

trate a particular dispute is a matter of contract interpretation and a question of law for the court). In its supplemental brief appellant concedes that under both the federal act and the state act "ordinary contract principles govern whether parties have formed an agreement to arbitrate," and the "same principles apply without regard for which act controls." In this posture, the controlling issue is, therefore, whether there is an enforceable contract. The decision on this issue is determined by the substantive law of Texas.

The preface to the handbook has been quoted above. It explicitly states that the handbook was not intended to constitute a legal contract "because that can only occur with a written agreement executed by a facility Executive director and an AMI Senior Executive Officer." The evidence shows that no such written agreement was ever so executed.

The acknowledgment form has also been quoted above and the language explicitly states that nothing about the document is binding on the employer, and the employer reserved the right to amend or rescind any provisions of the handbook "as it deemed appropriate" within its sole discretion. It was further set out that Cooper was an "at will" employee and that as a condition of continued employment, she agreed to submit any complaints concerning her employment to arbitration.

■ The Texas Supreme Court has held that consideration for a valid contract between an employer and an at-will employee cannot depend on continued employment because such a promise is illusory. "Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment.... When illusory promises are all that support a purported bilateral contract, there is no contract." *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 644–45 (Tex. 1994).

---

4. We recognize that we are not dealing with a situation explicitly falling under the exception in the arbitration acts for enforcement "save upon such grounds as exist at law or in equity for the *revocation* of any contract." We believe the in- clusion of this language in the acts, however, supports the proposition that a contractual agreement to arbitrate is a preliminary requirement for a court to compel arbitration.

In a post-submission brief, appellant argues that Cooper's and its mutual promises to arbitrate constitute sufficient consideration to support the contract, and relies upon two federal circuit court opinions, *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir. 1997) and *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir.1997), for authority. Appellant's argument is unpersuasive because: 1) there was no mutuality of obligation because appellant's agreement to continue Cooper's employment was illusory from the purported contract's inception;[5] and 2) the language from the handbook, including the acknowledgment form, expressly denied that appellant was bound by the policies set out in that document. *See Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993) (holding "[a] disclaimer in an employee handbook ... negates any implication that a ... manual places a restriction on the employment at will relationship"). Furthermore, the results of the two federal cases are contrary to the substantive law of Texas, which controls the disposition of this case.

Appellant also contends Cooper's continued performance of labor constituted a unilateral contract to arbitrate. While we do not dispute the fact that continued employment may be sufficient to modify an at-will employment contract, see *Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 229 (Tex. 1986), we do not believe appellant's contention addresses the issue of whether a contract to arbitrate existed in this instance, because this argument, like appellant's other assertions, calls for Cooper to furnish *all* of the consideration for a binding contract containing a term she did not desire nor negotiate.[6] *See Light v. Centel Cellular Co.,* 883 S.W.2d at 645 n. 6.

Accordingly, the judgment of the trial court is affirmed.[7]

---

5. Indeed, under the at-will employment doctrine, appellant could have fired Cooper the very minute she signed the acknowledgment form.

6. Although the inclusion of an arbitration procedure in an "Acknowledgment Form" does not, *per se,* render unenforceable an agreement to submit to such a process, we note the form Cooper signed contained only one blank for a signature and thus supports her assertion that she was without the power to bargain for terms

in a seemingly innocuous "acknowledgment form."

7. Following submission, counsel for appellant filed an affidavit concerning evidence before the trial court. Cooper answered with a motion to strike the affidavit, which motion was carried with the case. Since the affidavit is immaterial to our disposition of the case, the motion to strike is overruled. *See Silk v. Terrill,* 898 S.W.2d 764, 766 (Tex.1995).