## In re KELLOGG BROWN & ROOT, Relator.

### No. 01–01–01177–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 25, 2002.

Rehearing Overruled July 19, 2002.

---

Thomas N. Thurlow, Thurlow & Associates, Houston, for Real Party In Interest.

W. Carl Jordan, Vinson & Elkins, Houston, for Relator.

Panel consists of Justices COHEN, NUCHIA, and SMITH.*

## OPINION

SAM NUCHIA, Justice.

Relator, Kellogg Brown & Root (Kellogg) filed a motion to compel arbitration of a claim by Keith D. Gray, the real party in interest, for wrongful discharge. The

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

trial judge, the Honorable Tony Lindsay of the 280th District Court, Harris County, denied Kellogg's motion, and Kellogg filed a petition for writ of mandamus, asking this Court to direct Judge Lindsay to vacate the order denying the motion to compel and to enter an order compelling the parties to proceed to arbitration under the Federal Arbitration Act (FAA).[1] We conditionally grant the petition.

## BACKGROUND

Gray was employed as a pipefitter helper by Kellogg. During his employment with Kellogg, he signed two identical documents, each titled "NEW HIRE/RE-HIRE," which provided

In consideration of my employment, I agree that my assignment, job or compensation can be terminated with or without cause, with or without notice at any time at the option of the Company or myself. I also agree that I will be bound by and accept as a condition of employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. I UNDERSTAND THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT I MIGHT HAVE AGAINST THE COMPANY RELATED TO MY EMPLOYMENT, INCLUDING MY TERMINATION AND ANY AND ALL PERSONAL INJURY CLAIMS, ARISING IN THE WORKPLACE, I HAVE AGAINST ANY OTHER PARENT OR AFFILIATE OF THE COMPANY, BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF TO THE COURT SYSTEM. I also

1. 9 U.S.C.S. §§ 1–16 (LEXIS Law 1997).

agree that any employment contract or any other agreement which is inconsistent with the provisions of this notice or Dispute Resolution Program is absolutely void unless entered into in writing by the Chief Executive Officer.

No date appears by the signature of either Gray or the witness. On one of these documents, under the heading "SEPARATION," the signature of the project department manager is followed by the date "5/9/00," and a box has been checked to indicate that a copy was mailed to the employee on "5/09/00."

The Halliburton Dispute Resolution Plan[2] (the Plan) provides, "The Plan contractually modifies the 'at-will' employment relationship between the Company and its Employees" to the extent stated in the Plan. The Plan covers all legal and equitable claims, including discrimination, harassment, workers' compensation retaliation, defamation, and disputes in connection with any employee benefit plan. However, "the Plan does not apply to claims for workers' compensation benefits or unemployment compensation benefits." The Plan applies to and binds the company and its employees, except those employees represented by a labor organization.

The Plan may be amended or terminated by the company by giving at least 10 days notice to current employees, but the amendment or termination will not apply to any dispute for which a proceeding has been initiated pursuant to the rules of the Plan. The Plan provides that the Federal Arbitration Act applies to arbitration proceedings, and, under the Plan, the substantive legal rights, remedies, and defenses of all parties are preserved. The arbitrator

is given the authority to order all relief that a party could obtain from a court on the basis of the claims made, including punitive damages, and, in addition, may award a prevailing employee a reasonable attorney's fee.

Under the Plan, an employee who wishes to initiate arbitration is to pay a $50 fee to the dispute resolution provider selected by the employee.[3] The company agrees to pay all additional fees and expenses of arbitration. If the company initiates the arbitration, the employee does not pay the $50 fee. Discovery costs and fees and expenses of witnesses, experts, and consultants are borne by the party incurring such costs. If the employee consults with or retains an attorney in connection with the arbitration, the employee is responsible for the attorney's fees, except that the Plan will pay a maximum annual benefit, under its legal consultation plan, of $2,500, with the employee paying a deductible of $25 and a 10% co-pay.

On May 9, 2000, Gray's employment with Kellogg was terminated. Gray filed a lawsuit for wrongful discharge, alleging that he was discharged because he had filed a worker's compensation claim on May 5, 2000 or because he had proceeded with the claim with the assistance of an attorney. In its answer, Kellogg asserted its rights under the arbitration agreement and requested that the lawsuit be dismissed or stayed. In November 2000, Kellogg filed a motion to compel arbitration, asserting that Gray and Kellogg had entered into an enforceable arbitration agreement and the FAA applied both by the terms of the agreement and because the Kellogg employment context affected

---

**2.** Halliburton Company is the parent company of Kellogg.

**3.** The Plan designates three dispute resolution providers: American Arbitration Association

(AAA), Judicial Arbitration and Mediation Services (JAMS), and Center for Public Resources (CPR).

interstate commerce. In support of its motion, Kellogg attached the affidavit of Don Oden, Shared Services Supervisor on the Kellogg construction project on which Gray had worked. The affidavit stated that the construction project was to expand a Shell refinery to permit a Shell/Pemex joint venture to increase production of petroleum products, which were to be distributed into Mexico and locations throughout the United States. Also attached were the two documents signed by Gray, a copy of a brochure describing the Dispute Resolution Program, and a copy of the Plan and its rules.

Gray's response opposed the motion to compel arbitration. However, in July 2001, Gray's attorney wrote Kellogg's attorney, acknowledging Kellogg's desire for arbitration and asking who would conduct the arbitration and what discovery would be allowed. Kellogg's attorney responded by letter, describing the process and informing Gray of the $50 fee to be paid to the chosen provider. On September 25, 2001, Gray's attorney wrote Kellogg's attorney, enclosing a $50 check, selecting JAMS as the provider, and specifying certain discovery he wanted to pursue.

In late November 2001, Kellogg's attorney learned that the lawsuit was still on the trial docket and was set for trial on November 30. In a telephone conversation on November 29, Gray's attorney informed Kellogg's attorney that Gray had no intention of arbitrating his claim because the trial court had not ordered arbitration. On December 5, the trial court held a hearing on Kellogg's motion to compel arbitration and denied the motion. The trial court announced that it found no contract because there was no consideration and, specifically, that the provision that the employee pay only a $50 fee was not "consideration for this particular al-leged contract which says new hiree/rehire [*sic*]."

## DISCUSSION

■ When a trial court erroneously denies a party's motion to compel arbitration under the FAA, the movant has no adequate remedy at law and is entitled to a writ of mandamus. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001) (orig.proceeding).

### *Enforceability of the Agreement*

■ A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of the agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig.proceeding). If one party denies that there is a binding arbitration agreement, the trial court may summarily decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992) (orig.proceeding). Whether there is an enforceable agreement to arbitrate is a question of law and is therefore reviewed de novo. *See J.M. Davidson, Inc. v. Webster*, 49 S.W.3d 507, 511 (Tex.App.-Corps Christi 2001, no pet.); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.).

Kellogg produced, as evidence of an arbitration agreement, two one-page documents signed by Gray, a copy of a company brochure explaining the dispute resolution program, and a copy of the Plan. Gray argued that there was no evidence to establish when the two documents were signed except for Oden's deposition, which states that the two documents were "signed by Mr. Gray during his employment with [Kellogg]." The second of

these two documents, under the heading "SEPARATION," indicates that a copy of the document was mailed to the employee on May 9, 2000 and is signed by the project department manager and dated "5/9/00," the date of Gray's termination.

The two documents at issue contain, under a heading "NEW HIRE/REHIRE," an agreement to be bound by the terms of the dispute resolution program as a condition of employment and incorporating by reference the terms of that program. Both documents are signed by a witness and Gray. Oden's affidavit states that these two documents were signed by Gray during his employment with Kellogg.

Gray argues on appeal that the second document "is dated May 9, 2000" and that there was no evidence to establish when the first was signed. However, Gray also acknowledges that Oden's affidavit was "the only evidence" on this point. Gray did not produce any controverting affidavit or other evidence. Thus, the only evidence on this issue establishes that the documents were signed during Gray's employment with Kellogg.[4]

Gray argued at the hearing, and argues on appeal, that there was no consideration to support the agreement to arbitrate and, therefore, the agreement is unenforceable. In support of this argument, Gray cites *Webster*, 49 S.W.3d at 507, and *Cooper*, 960 S.W.2d at 386. In both *Webster* and *Cooper*, the arbitration provisions were binding on the employee, but not the employer; could be amended

or cancelled by the employer without notice to the employee; and offered only at-will employment as consideration for the agreement. *Webster*, 49 S.W.3d at 514; *Cooper*, 960 S.W.2d at 388–89. In addition, in *Cooper*, the employee handbook explicitly stated that it was not intended to constitute a legal contract. *Cooper*, 960 S.W.2d at 388.

In the present case, the Plan binds Kellogg as well as Gray. Under the Plan, Kellogg agreed to pay all fees and expenses of the arbitration except for a $50 fee to be paid by Gray. In addition, Kellogg agreed to provide up to $2,500 per year to reimburse Gray for attorney's fees associated with the arbitration. Kellogg agreed to give at least 10 days notice before modifying or terminating the Plan, and Kellogg could not modify or terminate the Plan for any claims initiated under the Plan prior to the modification or termination. Furthermore, the agreement to arbitrate was binding on both parties, and, thus, Kellogg could not evade arbitration of a dispute with an employee by terminating the employment. We hold that Kellogg's agreement to bind the company to the Plan, to give notice of any modifications or termination, to continue the unmodified Plan for disputes already in progress, to pay fees and expenses of the arbitration, and to reimburse Gray for up to $2,500 in attorney's fees is consideration for Gray's agreement to be bound by the program. Accordingly, we hold that Gray's agreement to arbitrate is binding and enforceable.

4. Some discussion at the hearing and in Gray's brief implies that the validity of the agreement to arbitrate is affected by whether the two documents were signed by Gray before he was hired or during his employment. "Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of

continued employment." *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 644 (Tex. 1994). We conclude that whether the documents were signed before or during Gray's employment is irrelevant because, as a matter of law, neither Gray's initial hiring nor his continued employment was consideration for the agreement to arbitrate.

### Nature of the Claim to Be Arbitrated

■ Gray argues that the "arbitration document is void" because it would be a violation of public policy to arbitrate his claim for workers' compensation benefits.

The Plan explicitly excludes claims for workers' compensation benefits and unemployment compensation benefits. However, the Plan explicitly includes claims based on workers' compensation retaliation. Gray's claim, as stated in his original petition, was based on an allegation that he was "wrongfully discharged or otherwise discriminated against ... because of the above described worker's compensation claim and/or because he proceeded with the claim with the assistance of an attorney." Gray's contention that Kellogg is attempting to arbitrate his workers' compensation claim is without merit.

Gray also "notes" that "no Texas appellate courts have required ... Plaintiffs to ... submit their claims to arbitration in Worker's Compensation retaliatory discharge cases." Gray makes no argument and cites no authority in connection with this comment.

The Plan explicitly includes claims for workers' compensation retaliation. Therefore, Kellogg has carried its burden to show that Gray's claim falls within the scope of the agreement.

### Application of the Federal Arbitration Act

■ Gray argues that Kellogg has not established that his employment involved interstate commerce and, therefore, the FAA does not apply to his dispute. However, under the section entitled "Applicable Law," the Plan provides, "The [Federal Arbitration] Act shall apply to this Plan, the Rules, and any proceedings under the Plan or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator,

or settlements under the Plan or the Rules." Thus, the parties have agreed to arbitrate under the FAA.

■ When there is no express agreement to arbitrate under the FAA, a party may establish the applicability of the FAA by showing that the transaction affects or involves interstate commerce. *See Stewart Title Guar. Co. v. Mack*, 945 S.W.2d 330, 333 (Tex.App.-Houston [1st Dist.] 1997, writ dism'd w.o.j.). However, courts have upheld choice-of-law provisions in arbitration agreements. *See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 472, 109 S.Ct. 1248, 1252, 103 L.Ed.2d 488 (1988) (upholding choice of California law to govern arbitration although interstate commerce involved because applying federal law would have forced the parties to arbitrate in a manner contrary to their agreement); *D. Wilson Constr. Co. v. Cris Equip. Co.*, 988 S.W.2d 388, 392 (Tex. App.-Corpus Christi 1999, pet. granted by agr.) (applying Texas Arbitration Act on agreement of parties although interstate commerce involved) (rev'd and rem. for rendition of judgment in accordance with parties' agreement).

■ We hold that when, as here, the parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce. Accordingly, we need not consider Gray's argument that the FAA does not apply.

### CONCLUSION

The agreement between Kellogg and Gray to submit disputes to arbitration is valid and enforceable, Gray's wrongful discharge complaint is subject to the agreement, and the FAA is applicable to the agreement. Therefore, the trial court had no discretion to deny Kellogg's motion to

compel arbitration. We conditionally grant the writ of mandamus and direct the trial court to order that Gray's claim proceed to arbitration. Writ will issue only if the trial court fails to do so.