Petition for Writ of Mandamus Dismissed in Part and Conditionally
Granted in Part, and Majority and Concurring Opinions filed September 30, 2005









 

Petition for Writ of Mandamus
Dismissed in Part and Conditionally Granted in Part, and Majority and
Concurring Opinions filed September 30, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

 

NO. 14-04-01008-CV

 

 

____________

 

 

IN RE: CHOICE
HOMES, INC., MICKY MAY, AND JAMES B. WHITE



 

 



 

ORIGINAL PROCEEDING

PETITION FOR WRIT OF MANDAMUS

 



 

M A J O R I T Y   O P I N I O N








In this mandamus proceeding, the relators,
a homebuilding company, one of its current employees, and a former employee,
seek a writ of mandamus compelling the Honorable David E. Garner, judge of the
10th Judicial District Court of Galveston County, to compel to arbitration
certain claims asserted by two former employees in the underlying
litigation.  Concluding that the
homebuilding company lacks standing, we dismiss the petition as to its request
for mandamus relief.  Concluding that the
arbitration agreement covers the claims in question, we conditionally grant the
mandamus relief sought by the other two relators.

I.  Background

The real parties in interest, Carl M.
Bright and Dennis J. Czajka, are former employees of relator, Choice Homes,
Inc., and are the plaintiffs in the underlying case.  They brought suit against Choice Homes, its
current employee, Micky May, and two of the company=s  former employees, James B. White and David A.
Roskos.  The plaintiffs contend that they
were wrongfully terminated or constructively terminated from their employment
at Choice Homes.  They assert claims
based on alleged statutory and common law wrongful termination, fraud,
negligent misrepresentation, breach of contract, unconscionability, promissory
estoppel, reformation/quantum meruit, unjust enrichment, tortious interference,
negligence, defamation, invasion of privacy by disclosure of private facts,
intentional infliction of emotional distress, and civil conspiracy.  All four defendants filed a motion to compel
arbitration, arguing that all of the claims asserted are subject to arbitration
under two identical written arbitration agreements the plaintiffs signed upon
their employment with Choice Homes. 
Under these contracts, entitled AElection and
Arbitration Agreement@ (hereinafter, AArbitration
Agreement@), each of the plaintiffs agreed to
resolve through binding arbitration certain disputes with Choice Homes that
might arise during or after their employment. 
The scope and enforceability of this arbitration agreement is at the
heart of this mandamus proceeding.








Following a hearing, the trial court
signed an order on October 21, 2004, in which it granted the motion to compel
arbitration as to all claims asserted against Choice Homes and Roskos and as to
some of the claims asserted against May and White.  The trial court declined to compel
arbitration of two groups of claims: (1) the claims against May and White in
their individual capacities based on alleged defamation, invasion of privacy,
and civil conspiracy alleged to have occurred outside the scope of May=s and White=s employment with
Choice Homes and after the plaintiffs= separation from
employment with Choice Homes, and (2) the claim brought by Czarjka against
White in his individual capacity, alleging breach of promise relating to an
alleged loan of money.

The relators filed their petition for writ
of mandamus, asserting the trial court misapplied the law and abused its
discretion in refusing to compel arbitration of these claims.  They ask this court to issue a writ of
mandamus ordering the trial judge to withdraw the October 21, 2004 order and to
issue a new order compelling all claims asserted by the plaintiffs to
arbitration.

II.  Standard for Mandamus Relief

A writ of mandamus will issue to correct a
clear abuse of discretion when there is no other adequate remedy at law.  Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992) (orig. proceeding).  A party
seeking relief from the denial of arbitration sought under the Federal
Arbitration Act (hereinafter, AFAA@) has no adequate
remedy by appeal and is entitled to mandamus relief to correct a clear abuse of
discretion by the trial court.  In re
L & L Kempwood Associates, L.P., 9 S.W.3d 125, 128 (Tex. 1999) (per
curiam).

A trial court clearly abuses its
discretion if it reaches a decision so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law. 
Walker, 827 S.W.2d at 839. 
With respect to the resolution of factual issues, this means that we may
not substitute our judgment for that of the trial court, even if we would have
decided the issue differently.  Id.
at 839B40.  Instead, we may not overturn the trial court=s decision unless
that court reasonably could have reached only the opposite decision.  See id. at 840.  The relator has the burden of establishing
that the trial court abused its discretion. 
Id. at 839.








With respect to the resolution of legal
issues, however, our review is much less deferential.  Id. 
The trial court has no discretion in determining what the law is or in
applying the law to the facts.  Id.  Therefore, a clear failure by the trial court
to analyze or apply the law correctly constitutes an abuse of discretion.  Id.

III.  Analysis

Does Choice Homes have standing to
seek mandamus relief?

 

As a preliminary matter, we must determine if Choice Homes
has standing to seek mandamus relief in this proceeding.  The trial court=s order unambiguously states that all
claims against Choice Homes, including all claims for vicarious liability, are
ordered to arbitration.  There is nothing
in the record that would show Choice Homes has any interest in whether the
claims at issue against White and May are compelled to arbitration.  To have standing a party must be affected by
the controversy at hand.  See McAllen
Med. Ctr. v. Cortez, 66 S.W.3d 227, 234 (Tex. 2001).  Because Choice Homes has been granted all the
relief sought and will not be adversely affected if Bright=s and Czajka=s claims against White and May are
not ordered to arbitration, Choice Homes lacks standing to challenge the trial
court=s refusal to order these claims to
arbitration.  See IDS Life Ins. Co. v.
SunAmerica, Inc., 103 F.3d 524, 527 (7th Cir. 1996).  Accordingly, we dismiss the petition for writ
of mandamus as to relator Choice Homes for lack of jurisdiction.

Did the trial court abuse its
discretion in failing to send all of the plaintiffs= claims to arbitration?

 








The party seeking to compel arbitration by mandamus first
must show the existence of an arbitration agreement subject to the FAA.  In re J.D. Edwards World Solutions Co.,
87 S.W.3d 546, 549 (Tex. 2002) (per curiam). 
Once the party establishes such an agreement, it then must demonstrate
that its claims fall within the scope of that agreement.  Id. 
Federal policy embodied in the FAA favors agreements to arbitrate, and
courts must resolve any doubts about the scope of an arbitration agreement in
favor of arbitration.  In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001).  If the arbitration agreement encompasses the
claims in question and the party opposing arbitration has failed to prove its
defenses,[1]
the trial court has no discretion; its only option is to compel arbitration and
stay its own proceedings.  Id. at
753B54.

Does an
arbitration agreement subject to the FAA exist?

The parties do not dispute the
Arbitration Agreement=s existence or whether the arbitration
agreement is governed by the FAA.  By
signing the Arbitration Agreement, White and Czajka agreed to abide by its
terms, which incorporate by reference Article IX of the AChoice Homes, Inc.
Employee Injury Benefit Plan Summary Plan Description@ (hereinafter, Athe Plan
Description@). 
The Plan Description specifically provides that the FAA will govern Athe
interpretation, enforcement, and all judicial proceedings under and/or with
respect to the Election and Arbitration Agreement.@  When parties agree to arbitrate under the
FAA, they are not required to establish that the transaction at issue involves
or affects interstate commerce.  In re
Kellogg Brown & Root, 80 S.W.3d 611, 617 (Tex. App.CHouston [1st
Dist.] 2002, orig. proceeding). 
Therefore, we conclude the Arbitration Agreement is governed by the
FAA.  See id.

Do the claims in dispute fall within the scope of the
Arbitration Agreement?








Because the relators have established the existence of an
agreement to arbitrate subject to the FAA, we next must determine whether the
Arbitration Agreement covers the claims at issue.  To determine whether these claims fall within
the scope of the Arbitration Agreement, we focus on the factual allegations
rather than the legal claims asserted.  Prudential
Sec. Incorp. v. Marshall, 909 S.W.2d 896, 900 (Tex. 1995).  When considering the Arbitration Agreement,
we must give Adue regard@ to the federal
policy favoring arbitration.  Webb v.
Investacorp., Inc., 89 F.3d 252, 258 (5th Cir. 1996).  We are to construe arbitration clauses
broadly, and when a contract contains an arbitration clause, there is a
presumption of arbitrability.  See
AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 650
(1986).  Any doubts as to arbitrability
are to be resolved in favor of coverage. 
In re FirstMerit Bank, 52 S.W.3d at 754. Likewise, we resolve any
doubts about the scope of the Arbitration Agreement in favor of coverage.  Id.

The relators contend the Arbitration Agreement covers any
claim that exists or may exist in the future between any employee or former
employee of Choice Homes.  They argue the
trial court erred in excluding some claims from arbitration.  The issue of arbitrability involves legal
questions of contract interpretation regarding the scope of the arbitration
provision.  Therefore, we construe the
scope of an unambiguous arbitration agreement as a matter of law.  See Kline v. O=Quinn, 874 S.W.2d 776,
782 (Tex. App.CHouston [14th Dist.] 1994, pet. denied).

The Arbitration Agreement states:

MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION: I recognize that disputes may
arise between the Company (or one of its affiliates) and me during or after my
employment with the Company.  I
understand and agree that any and all such disputes that cannot first be
resolved through the Company=s internal dispute resolution procedures or mediation must
be submitted to binding arbitration.

I acknowledge and understand that by signing this Agreement
I am giving up the right to a jury trial on all of the claims covered by this
agreement in
exchange for eligibility for the Plan=s medical, disability, dismemberment and death benefits and
in anticipation of gaining the benefits of a speedy, impartial,
mutually-binding procedure for resolving disputes.

This agreement to resolve claims by arbitration is mutually
binding upon both me and the Company (and its affiliates), and it binds and
benefits our successors, subsidiaries, assigns, beneficiaries, heirs, children,
spouses, parents and legal representatives.

. . . 








CLAIMS SUBJECT TO ARBITRATION: Claims and disputes covered by
this Agreement include:

(A) all claims and disputes that I may now have or may in
the future have against the Company and/or its successors, subsidiaries and
affiliates and/or any of their officers, directors, shareholders, partners,
owners, employees and agents, or against any Company employee benefit plan
(including the Plan) or the plan=s administrators or fiduciaries . . . .

 

The scope of the Arbitration Agreement is broad.  It covers all current and future claims and disputes
that Bright and Czajka have against Choice Homes and any of its employees and
agents.  The Arbitration Agreement states
that it covers many types of claims, including but not limited to tort claims,
claims for personal or bodily injury or physical, mental, or psychological
injury, without regard to whether such injury was sustained on the job.  The Arbitration Agreement excludes from its
scope only criminal complaints and proceedings and claims before the Texas
Workforce Commission for unemployment benefits, neither of which is applicable
in this case.

In their factual allegations, Bright and Czajka assert that
May and White made false, defamatory statements about them.  Bright and Czajka do not provide much factual
support for their defamation claims, but Bright alleges that after her
termination, employees and agents of Choice Homes made defamatory statements
about her, accusing her of violating Choice Homes=s policies. Czajka
claims employees and agents of Choice Homes, specifically White and May, made
defamatory statements about him, which he claims has prevented him from finding
new employment.  Bright and Czajka do not
describe the substance of the alleged defamatory remarks, nor do they state
exactly when or to whom they were made.  








Bright and Czajka also claim that White and May invaded
their privacy by disclosing private information about them to third parties
while and after Bright and Czajka were employed by Choice Homes.  Bright claims that White has disclosed
details about her termination to third parties. 
In asserting these claims, Bright and Czajka do not describe the private
information allegedly disclosed, state the reason for disclosure, or identify
to whom or precisely when the information was disclosed.  Based on the pleadings, it appears that the
plaintiffs= invasion-of-privacy claims are grounded
on alleged disclosures relating to their employment or termination that
occurred before or after the plaintiffs= employment was
terminated. 

In their civil conspiracy allegation, Bright and Czajka
assert that the defendants conspired to commit tortious acts against them.  They allege that Athe Defendants
announced their plans to commit torts against Plaintiffs@ and Aagreed on a course
of action and committed unlawful and overt acts.@  These allegations are vague and provide no
details about the factual bases for these assertions.

In addition, Czajka alleges that, in exchange for a
personal loan of $10,000 by Czajka to White, White promised to move Czajka to
any of Choice Homes=s subdivisions where White served as
Community Manager, if Czajka wanted to work there.  Czajka bases this breach-of-promise claim on
White=s alleged refusal
to bring him to Galveston County as an employee of Choice Homes after White
moved there.  Based on Czajka=s pleadings, it
appears that his breach-of-promise claim against White arose prior to his
termination and relates to Czajka=s employment with
Choice Homes.

In light of the Arbitration Agreement=s broad language,
all of Bright=s and Czajka=s factual
allegations fall within the Arbitration Agreement=s scope.  Czajka and White do not allege many specific
facts regarding their claims for defamation, invasion of privacy, and
conspiracy.  The defamation and
invasion-of-privacy claims seem  to
involve White and May allegedly commenting on the reasons why Choice Homes
terminated Bright and Czajka.  The civil
conspiracy claims seem to address White=s and May=s alleged
violations of company policy.  Czajka=s
breach-of-promise claim relates directly to his employment with Choice
Homes.  Evaluating the factual
allegations in light of the broad scope of the Arbitration Agreement, we
conclude that the claims in question are covered by the agreement because they
are a subset of all current and future claims and disputes that Bright and
Czajka have against any employee or agent of Choice Homes.








The claims and disputes covered by the Arbitration
Agreement include all claims and disputes Bright and Czajka had at the time of
signing or might have in the future against Choice Homes or any of its
employees.  The record reveals that both
White and May were employees of Choice Homes at the time Bright=s and Czajka=s claims
accrued.  As third-party beneficiaries,
White and May can enforce the Arbitration Agreement.

Bright and Czajka argue that the Arbitration Agreement does
not apply to the claims in question because their claims involve torts
allegedly committed solely between individuals, which allegedly occurred after
their employment with Choice Homes, and are based on alleged acts that were
outside the course and scope of White=s and May=s employment.  Bright and Czajka also contend that the tort
claims at issue are not subject to the Arbitration Agreement because they do
not arise out of or relate to the claims subject to arbitration and could have been
maintained independently.  Had they
elected to do so, Bright and Czajka could have pursued these claims
independently in a separate lawsuit. In the Arbitration Agreement, however,
Bright and Czajka acknowledge that claims may arise Aduring or after@ employment with
the Choice Homes.  The Arbitration
Agreement does not require that the claims arise out of or relate to the
employee=s employment or
that the actions giving rise to the claims have been committed in the course
and scope of May=s and White=s employment.  Giving this plain language effect, all of the
claims asserted by the plaintiffs fall within the broad scope of the
Arbitration Agreement. 

Bright and Czajka also argue that the tort claims at issue
in this mandamus action are expressly excluded from the Choice Homes, Inc.
Employee Injury Benefit Plan (ABenefit Plan@).  They point to a provision in the Plan
Description that expressly excludes from coverage any injury Aarising out of an
act of a third person intended to injure the Participant because of personal
reasons and not directed at the Participant as an Employee of or because of his
or her employment by [Choice Homes].@  This provision, however, is an exclusion from
coverage by the Benefit Plan, not from the types of claims that must be
arbitrated.








Accordingly, we conclude the trial court abused its
discretion by not compelling the claims in question to arbitration.  See
Prudential Sec., 909 S.W.2d at 900.

Conclusion

Because Choice Homes received all relief requested in the
trial court, and will not be adversely affected if Bright=s and Czajka=s claims are not
ordered to arbitration, we conclude that Choice Homes lacks standing to seek
mandamus relief.  Accordingly, we dismiss  the petition for writ of mandamus as to
relator Choice Homes for lack of jurisdiction.

We also conclude the Arbitration Agreement covers all of
the claims asserted in the plaintiffs= live
pleadings.  By failing to compel these
claims to arbitration, the trial court abused its discretion.  May and White are effectively deprived of
their contractual right to a speedy alternative to conventional litigation and
therefore lack an adequate remedy at law. 
Accordingly, we conditionally grant the petition for writ of mandamus as
to relators May and White.  We are
confident that the trial judge will comply with this ruling.  The writ will issue only if the trial court
does not do so.

 

 

 

_________________________________

Kem Thompson Frost

Justice

 

Petition for Writ of Mandamus Dismissed in Part and
Conditionally Granted in Part, and Majority and Concurring Opinions filed
September 30, 2005.

 

Panel consists of Justices Frost, Seymore, and Guzman.
(Seymore, J., concurring.)

 

 

 

 

 











[1]  In the trial
court, White and Czajka asserted the defenses of procedural and substantive
unconscionability, fraud, duress, and failure of consideration.  They do not assert these defenses in this
proceeding.  The trial court implicitly
rejected these defenses and found the Arbitration Agreement to be valid and enforceable
by compelling arbitration of (1) all of their claims against Choice Homes and
Roskos and (2) some of their claims against White and May.