Opinion issued March 29, 2007












 



 




In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01016-CV






MEENA MATTHEWS, SHUBHRA BROWN, BHARATI DHYANI, SUNNY
JOSEPH, RUCHI JOSHI, BOBBY KHANNA, ANITA PANDE, ANURAG
PATHAK, VANDANA SHOKEEN, PREETIKA RANDIVE, GARIMA
MALHOTRA, AND NALLANI SRIRAM, Appellants


V.


USA EMPLOYMENT, L.L.C., Appellee






On Appeal from County Civil Court at Law No. 4 (1)

Harris County, Texas

Trial Court Cause No. 812,373






NO. 01-07-00001-CV


MEENA MATTHEWS, SHUBHRA BROWN, BHARATI DHYANI, SUNNY
JOSEPH, RUCHI JOSHI, BOBBY KHANNA, ANITA PANDE, ANURAG
PATHAK, VANDANA SHOKEEN, PREETIKA RANDIVE, GARIMA
MALHOTRA, AND NALLANI SRIRAM, Relators






ORIGINAL PROCEEDING

ON PETITION FOR WRIT OF MANDAMUS






MEMORANDUM OPINION


 Appellants/relators, Meena Matthews, Shubhra Brown, Bharati Dhyani, Sunny
Joseph, Ruchi Joshi, Bobby Khanna, Anita Pande, Anurag Pathak, Vandanna
Shokeen, Preetika Randive, Garima Malhotra, and Nallani Sriram ("the Teachers" or,
individually, "the Teacher"), filed this interlocutory appeal and petition for writ of
mandamus to challenge the trial court's October 25, 2006 order denying their motion
to compel arbitration. (2) In two issues, the Teachers contend that the trial court
erroneously denied arbitration because (1) a valid agreement to arbitrate governs the
claims at issue and (2) the right to arbitration was not waived. 


 We conditionally grant the petition for writ of mandamus and dismiss the
related interlocutory appeal as moot.

Background

 Real Party in Interest, USA Employment, L.L.C. ("USAE"), is an employment
agency that recruits individuals from foreign countries for employment in teaching
positions in the United States. USAE is a Delaware Corporation, with its principal
place of business in Houston, Texas, and with an office in New Delhi, India. The
Teachers are twelve school teachers, generally from India, who contracted with
USAE for employment in Texas, Arizona, Mississippi, and New York. 

 From 2002 to 2003, each of the Teachers executed a "Teacher Service
Agreement" ("the Agreement") with USAE. Pursuant to the Agreement, USAE was
to assist the Teacher with finding a teaching position in the United States in exchange
for a fee. It is undisputed that the Agreements were identical, with the exception of
the duration of each, which ranged from one to three years, and the fees charged,
which ranged from $6,500 to $18,000. 

 The Agreement obligated the Teacher to pay the fee when USAE "produce[d]
a job offer from any employer who interviewed" the Teacher. Upon receiving a job
offer, the Teacher was to mail, from India, 36 checks of $500 USD each to USAE. 
Upon the Teacher's arrival in the United States on a work visa, the Teacher was to
again mail 36 checks of $500, this time drawn on a United States bank, to USAE. 
Upon receipt of the second set of checks, USAE promised to return the overseas
checks within a week. Should the teacher fail to accept the position offered, USAE
would cash the 36 checks or institute collection efforts.

 Pursuant to the Agreement, the Teacher was obligated to pay the fee if any
United States employer hired her "in any capacity" during the duration of the
Agreement and even if the Teacher secured a "non-teaching position with an
employer not introduced by [USAE]." In addition, the Agreement required the
Teacher to 

 assign any income beyond the base salary of the TEACHER (i.e., any
sign-up bonus, cafeteria plan, tuitions, payments by schools for
attending courses or seminars, etc.) to [USAE], assign half of the net
monthly salary of the spouse, sign any loan papers with a bank or credit
union, sign any forms needed by the employing school for payroll
deduction of $500 per month, and pay $500 . . . per month to [USAE] on
the first day of each month after the TEACHER arrives in USA [sic] on
a work visa, till [sic] the $18,000 agency fee is fully paid.


 In addition, pursuant to the Agreement, the Teacher was to "exclusively use the
services of [USAE] and its associates for all . . . visa[s] or petitions for all family
members for labor certification" and all other immigration related work, and "[t]he
expenses for such services will be equal to that charged by the law firm of Tindall &
Foster, P.C., Houston, Texas." If the Teacher failed to pay the visa and attorney fees,
USAE would cash the Teacher's 36 checks or institute collection efforts.

 The Agreement contained an arbitration provision as follows, in pertinent part:

 Except for breaches or threatened breaches of the provisions of
Paragraphs 9 and 10 relating to equitable relief, any controversy or claim
arising out of or in any way between [the teacher] and [USAE], for any
cause or event, including but not limited to claims arising out of the
employment relationship and/or termination of employment, including
without limitation: claims for wages or other compensation; claims for
any breach of contract or covenant (except for violations of Paragraphs
9 and 10); all tort claims; claims of constructive discharge; claims for
discrimination; including but not limited to any and all past or present
controversies, claims, disputes or issues of which [the teacher] is or
should be aware of against [USAE] which are related to or arise out of
the employment relationship, including claims . . . relating to or
regarding the arbitrability of any controversy, claim, dispute or issue,
except for claims for workman's compensation benefits, shall be
FINALLY settled without recourse to the Courts and in accordance with
the provisions of the American Arbitrator's Association and the United
States Federal and Texas State laws.

(Italics added.)

 The arbitration agreement excepted certain claims under Paragraph 9,
"Termination of Employment," which provided that if the Teacher terminated the
Agreement prior to completing the term of employment with the school, then the
Teacher was liable for the total fee as damages. In addition, the arbitration agreement
excepted claims under Paragraph 10, "Confidentiality and Non-Disclosure," which
governed the return of USAE materials and prohibited unauthorized disclosure of
employment terms and proprietary information. 

 In addition to the Agreement, each of the Teachers executed a Promissory Note
("Note"), in which she agreed to pay the fee as outlined in the Agreement. Each Note
contained an arbitration provision identical to that contained in the Agreement except
for the omission in the Note of the language, emphasized above: "shall be FINALLY
settled without recourse to the Courts."

 In late 2003 and early 2004, fee disputes arose between USAE and individual
teachers. On March 12, 2004, USAE filed an original petition against each of the
twelve Teachers. (3) In each case, USAE titled its claim an "Action of Debt" and
alleged that the named teacher "breached the contract and note by failing to pay as
agreed." (4) To each petition, USAE appended a "Past Due Statement" and the affidavit
of its agent, Vijay Gupta, who verified the sum of the debt. In each case, USAE
sought damages, interest, and costs. The petitions were identical, except for each sum
allegedly owed. 

 Subsequently, the twelve individual suits were consolidated. On September 5,
2006, the Teachers filed an Amended Answer, contending that the Agreements were
unenforceable on the basis of illegality, fraud, duress, usury, and failure of
consideration, and that the USAE signatory, Jay Kumar, lacked capacity to bind
USAE. In addition, the Teachers asserted that USAE breached the Agreements by
failing to place the Teachers with employment as promised. The Teachers contended
that, before leaving India, they were promised jobs in the United States with specific
attributes and salaries and that, upon their arrival in the United States, they learned
that such jobs were not available to them. The Teachers allege that they were forced
to secure substandard positions on their own and that USAE wrongfully continued
to demand payment. The Teachers counterclaimed for breach of contract, fraud, and
violations of the Texas Deceptive Trade Practices Act, seeking actual and exemplary
damages, and rescission of each Agreement and Note. On September 18, 2006,
USAE moved for summary judgment, the grounds of which are not in the record.

 On October 19, 2006, the Teachers moved to compel arbitration, pursuant to
the arbitration provision in the Agreements. In its response to the motion, USAE
contended that its claims were excepted from the arbitration provision and that the
Teachers had waived any right to arbitration by waiting two years after the case was
set on the trial court's docket to seek arbitration. On October 26, 2006, after a
hearing, the trial court denied the Teachers' motion to compel arbitration. This action
gave rise to the Teachers' petition for mandamus relief.

Applicable Law

A. Procedural Posture

 The Teachers have filed an interlocutory appeal and petition for writ of
mandamus. We must first determine the proper procedural posture for reviewing this
case. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992); Hou-Scape
Inc. v. Lloyd, 945 S.W.2d 202, 204-05 (Tex. App.--Houston [1st Dist.] 1997, orig.
proceeding). When an arbitration provision is governed by the Texas General
Arbitration Act ("TGAA"), an interlocutory appeal is the appropriate mechanism to
challenge a denial of arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.098
(Vernon 2005); Jack B. Anglin Co., 842 S.W.2d at 272 n.11. When an arbitration
provision is governed by the Federal Arbitration Act ("FAA"), a petition for writ of
mandamus is the proper mechanism to challenge a denial of arbitration. 9 U.S.C. § 2
(1999); In re D. Wilson Constr. Co., 196 S.W.3d 774, 779 (Tex. 2006). When the
FAA applies to a specific contract, it preempts state law to the extent that state law
is inconsistent with the FAA. D. Wilson Constr. Co., 196 S.W.3d at 779-80. 

 Here, the Agreement does not specify governance by or exclusion of either the
FAA or the TGAA. The Agreement merely states that disputes shall be settled "in
accordance with the provisions of the American Arbitrator's [sic] Association and the
United States Federal and State laws," that "[t]he laws of the State of Texas and the
United States of America shall govern," and that "[a]ny action brought involving . . .
Arbitration" must be brought in Houston, Texas. The trial court's order does not
specify which act governs.

 The FAA applies to all suits in state or federal court when the dispute concerns
a "contract evidencing a transaction involving commerce." Jack B. Anglin Co., 842
S.W.2d at 269-70 & n.6. A contract evidences interstate commerce if it affects state
commerce. In re L&L Kempwood Assocs., L.P., 9 S.W.3d 125, 127 (Tex. 1999).
When, as here, the agreement is silent as to whether the FAA applies, the question of
whether the transaction affects interstate commerce is one of fact. In re Educ. Mgmt.
Corp., 14 S.W.3d 418, 422-23 (Tex. App.--Houston [14th Dist.] 2000, orig.
proceeding). 

 An employment relationship involving commerce is a sufficient transaction to
fall within the FAA. BWI Co. v. Beck, 910 S.W.2d 620, 622 (Tex. App.--Austin
1995, orig. proceeding). Here, if the Teachers' relationship with USAE involves
"commerce," then the FAA governs. In re Anaheim Angels Baseball Club, Inc., 993
S.W.2d 875, 877 (Tex. App.--El Paso 1999, orig. proceeding). "Commerce" is
"broadly construed and encompasses contracts relating to interstate commerce." 
Hou-Scape, Inc., 945 S.W.2d at 205. It is undisputed that USAE's principal place of
business is in Houston, Texas, and that USAE contracted with residents of India for
employment in public and private schools in Arizona, Mississippi, and New York. 
Thus, USAE conducted its business across state lines. See L&L Kempwood Assocs.,
L.P., 9 S.W.3d at 126-27 (finding interstate commerce when parties to contract reside
in different states). In addition, the Teachers' contracts inured to the benefit of public
and private schools in Arizona, Mississippi, and New York, where the Teachers
performed teaching services. Hence, the Agreements at issue relate to interstate
commerce. See id. (finding interstate commerce when parties contracted in one state
for performance in another state); Anaheim Angels Baseball Club, Inc., 993 S.W.2d
at 878 (same). Because the undisputed evidence clearly evidences a transaction
involving commerce, we conclude that the FAA governs the arbitration agreement. 
Accordingly, we address the Teachers' petition for writ of mandamus. See 9 U.S.C.
§ 2 (1999); D. Wilson Constr. Co., 196 S.W.3d at 779. 

B. Standard of Review

 Mandamus will issue only when the trial court violates a duty imposed by law
or clearly abuses its discretion and there is no adequate remedy by appeal. D. Wilson
Constr. Co., 196 S.W.3d at 780. "A trial court abuses its discretion when 'it reaches
a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error
of law.'" See Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). If a trial court
erroneously denies a party's motion to compel arbitration under the FAA, the movant
has no adequate remedy at law and is entitled to a writ of mandamus. In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001).

Scope of the Arbitration Agreement

 In issue one, the Teachers contend that the trial court improperly denied their
motion to compel arbitration because a valid agreement to arbitrate covers the claims
at issue. 

 To compel arbitration under the FAA, a party must prove (1) the existence of
a valid agreement to arbitrate and (2) that the subject claims fall within the scope of
that agreement. In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005);
In re Kellogg Brown & Root, 80 S.W.3d 611, 615 (Tex. App.--Houston [1st Dist.]
2002, orig. proceeding). Once this burden is met, if the opposing party fails to prove
any defenses to the enforcement of the agreement, the trial court has no discretion but
to compel arbitration. In re FirstMerit Bank, N.A., 52 S.W.3d at 754.

 Here, it is undisputed that a valid agreement to arbitrate exists in the
Agreements between the parties. USAE contends, rather, that the trial court properly
denied the Teachers' motion to compel arbitration because USAE's claims do not fall
within the scope of that agreement. 


 Whether a claim falls within the scope of an agreement to arbitrate presents a
matter of contract interpretation subject to de novo review. J.M. Davidson, Inc. v.
Webster, 128 S.W.3d 223, 227 (Tex. 2003); Kellogg Brown & Root, 80 S.W.3d at
615. Under the FAA, there is a strong presumption favoring arbitration and any
doubts as to whether a plaintiff's claims fall within the scope of the arbitration
agreement must be resolved in favor of arbitration. D. Wilson Constr. Co., 196
S.W.3d at 782-83. A court should not deny arbitration unless it can be said with
positive assurance that an arbitration clause is not susceptible to an interpretation that
would cover the dispute at issue. Id. at 783. In determining whether claims fall
within the scope of an arbitration agreement, we consider the factual allegations in
the complaint, not the legal causes of action. See FirstMerit Bank, N.A., 52 S.W.3d
at 754. 

 Here, the arbitration provision covers "any controversy or claim arising out of
. . . the employment relationship" and includes, "claims for any breach of contract or
covenant," "all tort claims," and any claims "relating to or regarding the arbitrability
of any controversy, claim, dispute or issue." 

 In each of its petitions, USAE's factual allegation to support its claim, which
it titled an "Action for Debt," is that the named teacher "breached the contract and
note by failing to pay as agreed." To each petition, USAE appended a "Past Due
Statement" listing each payment missed. In addition, USAE appended to each
petition the affidavit of its agent, Vijay Gupta, who verified the total sum of the debt. 
These claims fall squarely within the broad scope of the arbitration provision in the
Agreement, which expressly covers "any controversy or claim arising out of . . . the
employment relationship" and includes, "claims for any breach of contract." See D.
Wilson Constr. Co., 196 S.W.3d at 783 (considering alleged defects of performance
under contract).

 The Teachers counterclaimed for breach of contract, fraud, and violations of
the Texas Deceptive Trade Practices Act. The factual allegations to support these
counterclaims are that USAE failed to perform as promised under the Agreements by
failing to place the Teachers with employment. In their answer and petition for
counterclaims, the Teachers allege that, before leaving India, they were promised jobs
in the United States with specific attributes and salaries and that, upon their arrival
in the United States, they learned that such jobs were not available to them. The
Teachers allege that they were forced to secure substandard positions on their own
and that USAE wrongfully continued to demand payment. These breach of contract
and tort claims are also encompassed by the plain language in the arbitration
provision, which covers "any controversy or claim arising out of . . . the employment
relationship" and includes, "claims for any breach of contract" and "all tort claims."
See Hou-Scape Inc., 945 S.W.2d at 205-06; see also In re Jim Walter Homes, Inc.,
207 S.W.3d 888, 895 (Tex. App.--Houston [14th Dist.] 2006, orig. proceeding)
(recognizing as broad language encompassing tort and other claims relating to the
contractual relationship: "any" dispute "arising out of or relating to").

 USAE contends that its claims do not fall within the scope of the agreement to
arbitrate because the agreement excepts "claims under paragraphs 9 and 10."
Paragraph 9, "Termination of Employment," provides that "[i]f the TEACHER
terminates this Agreement prior to completing [specific duration of one to three years]
of employment with the school, then the TEACHER shall be liable to pay [USAE], 

damages equal to [the sum of the fee]." Paragraph 10, addresses violations of
"Confidentiality and Non-Disclosure." USAE does not, in its petitions, allege facts
that the named teacher terminated her employment prematurely under the Agreement
or that she violated her contractual duties of confidentiality. Moreover, to the degree
that the arbitration agreement excepts "breaches or threatened breaches of the
provisions of Paragraphs 9 and 10 relating to equitable relief," USAE did not seek
any specific equitable relief based on violations of paragraphs 9 or 10. (5) 

 We conclude that the scope of the arbitration agreement covers the claims at
issue and that the exceptions in the arbitration provision that USAE relies upon are
not applicable in this suit. We cannot conclude "with positive assurance" that the
agreement to arbitrate is not susceptible to an interpretation that would cover claims
at issue. See FirstMerit Bank, 52 S.W.3d at 754. We hold that the Teachers carried
their burden to show that there is a valid agreement to arbitrate between the parties
and that the claims at issue fall within the scope of that agreement.

 Accordingly, the Teachers' first issue is sustained.Waiver

 Because the Teachers carried their initial burden, the burden then shifted to
USAE to prove any defenses to the enforcement of the Agreement. Williams Indus.
v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 134-35 (Tex. App.--Houston [1st Dist.]
2003, no pet.). In issue two, the Teachers contend that USAE failed to prove its
asserted defense of waiver. USAE asserts that the Teachers waived their right to
arbitration because they failed to move for arbitration until two years after the case
was set on the trial court's docket. 

 Whether a party has waived its right to arbitration is a question of law that we
review de novo. In re Bruce Terminix Co., 988 S.W.2d 702, 703-04 (Tex. 1998);
Williams Indus., 110 S.W.3d at 136. Because public policy favors arbitration, there
is a strong presumption against finding that a party waived its right to arbitration. 
Bruce Terminix Co., 988 S.W.2d at 704; Williams Indus., 110 S.W.3d at 135. A party
does not waive its right to arbitration merely by delay; rather, waiver must be
intentional. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996). Waiver will
be found only when the party seeking arbitration "has substantially invoked the
judicial process to its opponent's detriment." In re Vesta Ins. Group, Inc., 192
S.W.3d 759, 763 (Tex. 2006); Williams Indus., 110 S.W.3d at 135. The judicial
process has been substantially invoked when the party seeking arbitration has taken
specific and deliberate actions, after the filing of suit, that are inconsistent with a right
to arbitrate or has actively tried, but failed, to achieve a satisfactory result through
litigation before turning to arbitration. Vesta Group, Inc., 192 S.W.3d at 763;
Williams Indus., 110 S.W.3d at 135. 

 USAE contends that the Teachers substantially invoked the judicial process for
over two years after the case was set on the trial court's docket before seeking
arbitration. Specifically, USAE contends that the Teachers filed a motion to dismiss
for lack of jurisdiction; original and amended answers and counterclaims; a request
for jury trial; a motion to quash depositions; and a notice of intent to depose USAE's
corporate representative. The Teachers also took the deposition of USAE's corporate
representative on December 8, 2005. In addition, contends USAE, it "drafted and
signed an agreement to consolidate the cases and an agreement to complete all
discovery by May 28, 2004." Further, USAE contends that the Teachers "invoked the
judicial process by informally requesting [that USAE] pass on the hearings on its
motion for summary judgment."

 Generally, participating in pre-trial discovery and motion practice will not
support a defense of waiver. Bruce Terminix Co., 988 S.W.2d at 704; EZ Pawn
Corp., 934 S.W.2d at 90 (holding no waiver although movant answered suit,
participated in docket-control conference, sent interrogatories and requests for
production, noticed deposition, and entered into agreed orders resetting case). In
Vesta, as the Teachers contend, the Supreme Court of Texas refused to find waiver
even on the basis of two years of litigation in the trial court involving over $200,000
in expenses and fees incurred by the non-movant due to "prolonged and extensive
discovery." 192 S.W.3d at 763. In concluding that the non-movant failed to show
prejudice, the court considered that the movant had made only standard requests for
disclosure and had noticed four depositions, but had not "showered" the non-movant
with discovery requests. Id. 

 Even if the Teachers substantially invoked the judicial process, they did not
waive their arbitration rights unless USAE proved that it suffered actual prejudice as
a result. Bruce Terminix Co., 988 S.W.2d at 704. "Prejudice" may occur when the
movant gains information that is not discoverable in arbitration or the party opposing
arbitration incurs costs due to the movant's actions or delay. See Bruce Terminix Co.,
988 S.W.2d at 704; Williams Indus., 110 S.W.3d at 135. 

 USAE does not complain that the Teachers gained information that is not
discoverable or that USAE incurred costs due to the Teachers' actions or delay. 
Rather, USAE specifically contends that it has suffered prejudice because "the
relevant facts have already been litigated in the companion case" brought by USAE
against 13 other teachers. (6) USAE's burden is to show that the Teachers substantially
invoked the judicial process to USAE's detriment. See Vesta Ins. Group, Inc., 192
S.W.3d at 763. USAE's litigation against defendants in another suit, who are
unrelated to the defendants in the instant suit, regarding separate claims, does not
demonstrate that the Teachers substantially invoked the judicial process to USAE's
detriment in this case. 

 In addition, USAE contends that it "will be prejudiced because this case was 

already presented to the trial court for a decision on the merits--through USAE's
Motion for Summary Judgment." Arbitration can be waived if the movant for
arbitration also moves for summary judgment in the trial court. See Williams, 110
S.W.3d at 135. However, here, it is USAE who presented a motion for summary
judgment to the trial court. The Teachers, as the movants for arbitration, have not
sought a judicial resolution of any claims. See Southwind Group Inc. v. Landwehr,
188 S.W.3d 730, 736 (Tex. App.--Eastland 2006, orig. proceeding).

 USAE has not, in the record before us, demonstrated that it suffered sufficient
prejudice to overcome the strong presumption against waiver. See Bruce Terminix
Co., 988 S.W.2d at 704. Accordingly, the Teacher's second issue is sustained.


Conclusion


 A party denied the right to arbitration under the FAA has no adequate remedy
by appeal and is entitled to mandamus relief to correct a clear abuse of discretion. 
See L&L Kempwood Assocs., L.P., 9 S.W.3d at 128. Because we conclude that the
trial court clearly abused its discretion in denying arbitration of the parties' dispute,
we conditionally grant mandamus relief. We direct the trial court to vacate its order
denying arbitration and to issue an order compelling arbitration. We are confident
that the trial court will comply and our writ will issue only if it does not. Having
finally disposed of the Teachers' issues by petition for writ of mandamus, we dismiss
the Teachers' interlocutory appeal as moot. (7)




 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.

1. ' " " 
 " " ' 
 §§  
2. 
 
3. 
 -- 
 
 
 
 
4. 
5. 
 " " 
 
6. 
7. - - 
 
 
 
 " "