**WILLIAMS INDUSTRIES, INC., Appellant,**

v.

**EARTH DEVELOPMENT SYSTEMS CORP., Appellee.**

No. 01–02–00913–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 24, 2003.

Rehearing Overruled May 29, 2003.

Eileen M. Gaffney, Michael D. Stein, Sheiness, Scott, Grossman & Cohn, L.L.P., Houston, for Appellant.

Keith E. Coulter, Andrews, Myers & Donaldson, Andrew P. McCormick, McCormick & McNeel, L.L.P., Matthew R. Muth, T. Michael Neville, T. Michael Neville & Associates, P.C., Houston, for Appellee.

Panel consists of Justices TAFT, KEYES and HIGLEY.

## OPINION

TIM TAFT, Justice.

Appellant, Williams Industries, Inc. ("Williams"), takes this interlocutory appeal from the denial of its application to compel arbitration and to stay proceedings. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(1) (Vernon Supp.2003) (authorizing such interlocutory appeal). We determine (1) whether Williams showed that the claims that it sought to arbitrate fell within the scope of two arbitration agreements and (2) whether appellee, Earth Development Systems Corp. ("EDS"), showed that Williams waived the right to arbitrate those claims. We reverse the judgment and remand the cause with instructions.

### Background

Williams was the general contractor in separate jobs for the construction of a Wal–Mart store ("the Wal–Mart job") and an Albertsons grocery store ("the Albertsons job") in Texas. Williams subcontracted with EDS to assist in both jobs. Each subcontract contained an identical arbitration provision.

Disputes arose from the construction jobs. On January 24, 2001, EDS sued Williams, three of Williams's employees at the Wal–Mart job, and three other individuals or entities. EDS alleged that Williams had breached the Wal–Mart job subcontract. EDS also alleged that Williams and its three employees had tortiously interfered with EDS's contract with another entity at that job. On June 27, 2001, Williams filed a cross-petition against

three co-defendants, seeking indemnity or contribution from them. On January 10, 2002, EDS amended its petition to add two more defendants, to expand its contract-breach claim against Williams to include the Albertsons job subcontract, and to add a claim for fraud and negligent misrepresentation against Williams and its three employees. On July 24, 2002, EDS supplemented its petition to allege that Williams had fraudulently concealed the existence of a surety and of two bonds issued by that surety and that Williams and the surety had failed to execute one bond properly.[1]

On July 1, 2002—about one and one-half years after EDS had sued Williams— Williams first moved to compel arbitration and to stay litigation.[2] EDS opposed Williams's motion on three grounds: (1) not all of EDS's claims fell under the arbitration agreements, (2) Williams waived its right to seek arbitration, and (3) Williams had not shown that the subcontract in the Albertsons job contained an arbitration provision. EDS's third ground was based on the fact that Williams had not attached to its motion to compel the subcontract from the Albertsons job. Accordingly, when Williams tendered a copy of the Albertsons job's subcontract at the hearing, EDS abandoned the third ground.[3]

The trial court denied Williams's motion to compel arbitration after having held a brief hearing. The order recited that the ruling was based on waiver. No fact findings and legal conclusions were filed. *See* TEX.R.APP. P. 28.1.

### Denial of Williams's Motion to Compel Arbitration

In its sole issue, Williams argues that the trial court erred in denying its motion to compel arbitration.

### A. Burden of Proof and Standard of Review

#### 1. The Parties' Burdens

■ "A party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and to show that the claims asserted against it fall within the arbitration agreement's scope." *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex.App.-Houston [1st Dist.] 2002, no writ) (combined appeal and orig. proceeding); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a) (Vernon Supp.2003). "If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement." *Mo-*

---

1. The surety was Hartford Fire Insurance Company ("Hartford"). EDS alleged that Hartford was the surety on a payment bond for the Wal–Mart job and on a separate bond filed by Williams to remove EDS's mechanic's lien affidavit as an encumbrance on the Albertsons job.

2. Williams's three employees who were also defendants joined Williams's motion to compel arbitration. We note that EDS alleged that the three employee defendants participated in the same fraud and tortious interference with contract that EDS alleged that Williams committed. The parties also appear to have treated Williams and its three employee de-

fendants as one entity for purposes of compelling arbitration below. Because the parties did not distinguish below between Williams and its three employees for purposes of determining whether to compel arbitration, neither do we. For simplicity's sake, we refer simply to Williams alone when discussing any aspect of the motion to compel.

3. Williams claims that EDS's concession of this third ground was broader, conceding every ground but waiver from EDS's written opposition to arbitration. That is a misreading of EDS's concession, which, from the context, concerned only the third ground.

*hamed,* 89 S.W.3d at 835 (citing *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999)).

### 2. The Defense of Waiver

One defense is that the party seeking arbitration has waived its right to arbitration.[4] *See, e.g., In re Oakwood Mobile Homes,* 987 S.W.2d at 573 (recognizing waiver as defense). Because public policy favors arbitration, there is a strong presumption against finding that a party has waived its right to arbitration, and the burden to prove waiver is thus a heavy one. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704, 705 (Tex.1998); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex. 1996). Any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix,* 988 S.W.2d at 705. Waiver may be implied or express, but it must be intentional. *See Mancias,* 934 S.W.2d at 89. Whether waiver occurs depends on the individual facts and circumstances of each case. *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 931 (Tex.App.-Houston [1st Dist.] 1996, no writ) (combined appeal and orig. proceeding); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 879 (Tex.App.-Waco 1992, writ denied). Waiver will be found only when (1) the party seeking arbitration has substantially invoked the judicial process and (2) the party opposing arbitration suffers actual prejudice as a result. *Pepe Int'l Dev.,* 915 S.W.2d at 931; *see In re Bruce Terminix,* 988 S.W.2d at 704.

### a. Substantially Invoking the Judicial Process

Substantially invoking the judicial process can occur when the proponent of arbitration actively tried, but failed, to achieve a satisfactory result in litigation before turning to arbitration. *In re Winter Park Constr., Inc.,* 30 S.W.3d 576, 579 (Tex.App.-Texarkana 2000, orig. proceeding). Examples include moving for summary judgment or seeking a final resolution of the dispute. *Id.* Substantially invoking the judicial process has also been described as taking specific and deliberate actions, after the suit's filing, that are inconsistent with the right to arbitrate. *See Sedillo v. Campbell,* 5 S.W.3d 824, 827 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (combined appeal and orig. proceeding); *Cent. Nat'l Ins. Co. of Omaha v. Lerner,* 856 S.W.2d 492, 494 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding).

### b. Actual Prejudice

The prejudice on which courts focus includes such things as (1) the movant's access to information that is not discoverable in arbitration[5] and (2) the opponent's incurring costs and fees due to the movant's actions or delay.[6] Showing prejudice is generally an evidentiary burden. *See Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 499–500 (Tex.App.-San Anto-

---

4. The standard for determining waiver of the right to arbitration is the same under both the Texas General Arbitration Act and the Federal Arbitration Act. *Sedillo v. Campbell,* 5 S.W.3d 824, 826 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (combined appeal and orig. proceeding).

5. *See In re Bruce Terminix Co.,* 988 S.W.2d at 704; *In re MONY Sec. Corp.,* 83 S.W.3d 279, 284 (Tex.App.-Corpus Christi 2002, no pet.) (combined appeal and orig. proceeding); *In*

re Nasr, 50 S.W.3d 23, 27 (Tex.App.-Beaumont 2001, no pet.) (combined appeal & original proceeding); *Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 499–500 (Tex.App.-San Antonio 2000, no pet.) (combined appeal and orig. proceeding); *In re Certain Underwriters at Lloyd's,* 18 S.W.3d 867, 872 (Tex.App.-Beaumont 2000, orig. proceeding).

6. *See Pennzoil,* 30 S.W.3d at 499; *In re Certain Underwriters at Lloyd's,* 18 S.W.3d at 872.

nio 2000, no pet.) (combined appeal and orig. proceeding) ("However, Arnold did not submit any evidence to the trial court in support of its general allegations [of prejudice].").[7]

### c. Standard of Review of a Finding of Waiver

■ Whether a party has waived its right to arbitrate is a question of law that we review de novo. *See In re Oakwood Mobile Homes*, 987 S.W.2d at 574; *accord In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex.2002). Nonetheless, some courts have held that the *findings* on which the legal determination of waiver is based (namely, substantial invocation of the judicial process and prejudice) are subject to a different standard of review because they are largely fact questions-although these

courts differ somewhat as to which standard of review applies.[8] For reasons discussed below, our resolution is the same regardless of which standard of review applies to the determination of prejudice.

### B. Williams's Initial Burden: Scope of the Arbitration Agreements[9]

■ In one sentence in its opposition to Williams's motion to compel, EDS argued that "not all Plaintiff's claims are subject to arbitration." EDS did not explain whether the "claims" of which it spoke meant (1) those against Williams (and its three employees) only or (2) those against other parties in the suit. Williams interprets EDS's ground to have meant the former; EDS claims that it meant the latter. We agree with Williams. Read in

---

7. *See also In re Oakwood Mobile Homes*, 987 S.W.2d at 573 ("The burden then shifted to the [opponent] Brandons to present evidence that ... [proponent] Oakwood had waived arbitration under the Agreement."); *In re MONY Sec.*, 83 S.W.3d at 283–84 (reviewing record for evidence of prejudice; also noting that opponent of arbitration has "burden of presenting evidence" to prevent enforcement of valid arbitration agreement); *In re Delta Homes, Inc.*, 5 S.W.3d 237, 240 (Tex.App.-Tyler 1999, orig. proceeding) ("Here, ... [the opponents] ... have set forth no evidence showing that they were actually prejudiced as a result of the delay. Thus, they have failed to establish Delta's waiver of the right to arbitrate."); *United Parcel Serv., Inc. v. McFall*, 940 S.W.2d 716, 720 (Tex.App.-Amarillo 1997, orig. proceeding) ("[The opponent] may have explained the extent of the delay, but he did not illustrate, by argument or evidence, how it prejudiced him. Thus, he did not carry the burden imposed by *EZ Pawn* or *Prudential*.").

8. *Compare Pennzoil*, 30 S.W.3d at 501 (Hardberger, C.J., concurring) (advocating clearly-erroneous standard), *Cent. Nat'l Ins. Co. of Omaha*, 856 S.W.2d at 494 n. 1 (applying clear-abuse-of-discretion standard because of nature of proceeding (mandamus), but noting that prejudice finding is normally subject to clearly-erroneous standard), *Marble Slab Creamery, Inc. v. Wesic, Inc.*, 823 S.W.2d 436,

438–39 (Tex.App.-Houston [14th Dist.] 1992, no writ) (applying clearly-erroneous standard), *and Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 592 (Tex.App.-Dallas 1991, writ dism'd w.o.j.) (applying clearly-erroneous standard) *with Pepe Int'l Dev. Co.*, 915 S.W.2d at 929, 931–32 (applying no-evidence standard); *cf. Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 693–94 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (combined appeal and orig. proceeding) (holding factual questions concerning order denying arbitration-there, whether agreement existed-subject to no-evidence review); *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 377 (Tex.App.-Tyler 1996) (noting same), *writ dism'd w.o.j.*, 988 S.W.2d 731 (Tex.1998); *Belmont Constructors, Inc. v. Lyondell Petrochem. Co.*, 896 S.W.2d 352, 356 (Tex.App.-Houston [1st Dist.] 1995, no writ) (combined appeal and orig. proceeding) (same); *cf. also Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex.App.-San Antonio 1996, no writ) (employing abuse-of-discretion standard to review ruling on defense to arbitration).

9. We assume without deciding that, as EDS claims, we must reach this ground even though the trial court's order recited that it was based on another ground.

context, Williams's motion did not seek to compel other parties to arbitrate anything. Given the limits of Williams's motion to compel, and given that EDS did not explain below what its argument meant, we construe EDS's argument to have concerned only its claims against Williams and its three employees, *i.e.*, that its tort claims against Williams and its employees did not fall under the arbitration agreements. So construed, this was an argument that Williams did not carry its initial burden to show that the claims that it sought to send to arbitration fell within the arbitration agreements' scope. *See Mohamed*, 89 S.W.3d at 835. Williams disputes this contention.

▮▮▮▮▮▮ Because of the strong policy favoring arbitration, "[a]n order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding) (Federal Act). Thus, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.; see Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 590 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (TAA). In determining whether a claim falls within the scope of arbitration, we focus on the facts alleged, not on the causes of action asserted. *Hou–Scape*, 945 S.W.2d at 205; *Valero Energy*, 2 S.W.3d at 590. We consider whether the alleged facts "touch matters" covered by the underlying agreement of which the arbitration agreement is a part. *Hou–Scape*, 945 S.W.2d at 205.

We conclude that Williams carried this aspect of its initial burden. In support of its motion to compel arbitration, Williams submitted the two subcontracts and their arbitration clauses, and the trial court took judicial notice of the file, including EDS's petitions. The subcontracts, arbitration provisions, and petitions were sufficient materials for the trial court to assess whether EDS's claims against Williams were subject to arbitration. *See Menna v. Romero*, 48 S.W.3d 247, 250 (Tex.App.-San Antonio 2001, pet. dism'd w.o.j.) (holding that arbitration proponent carried burden of showing that valid arbitration agreement existed and that claims fell within agreement's scope when proponent introduced agreement into evidence and when trial court took judicial notice of agreement).

The arbitration agreements provided that "[a]ll claims, disputes and other matters in question arising out of or relating to the Subcontract, or the breach thereof, may, at [Williams's] sole option, be decided by litigation or arbitration." This language has been construed to be very broad. *See Hou–Scape*, 945 S.W.2d at 205–06 (citing cases); *Pepe Int'l Dev. Co.*, 915 S.W.2d at 930. EDS does not dispute that its contract-breach claims fell within the arbitration agreements' broad scope. Rather, EDS indicates that its tort claims did not. We disagree.

For its tortious-interference claim, EDS alleged that

> Williams interfered with [EDS's] contract with DDS [another subcontractor on the Wal–Mart job] by requiring [EDS] to use DDS for certain work that [EDS] wished to perform itself, and by negotiating with DDS to replace [EDS] while [EDS] was still on the job.... Williams conspired to and did misrepresent DDS' charges for work after the wrongful termination [of EDS], which Williams has wrongfully attempted to back charge to [EDS].... [Williams's] three employees] each participated in and caused this interference.

For its fraud and negligent misrepresentation claims, EDS alleged that Williams and others misrepresented the state of EDS's performance at the Wal–Mart job and that Williams's three employees each participated in that fraud. EDS's remaining claims against Williams concerned a payment bond for the Wal–Mart job and a bond filed by Williams "to remove [EDS's] mechanic's lien affidavit as an encumbrance on the Albertsons job." Each of these extra-contractual claims arose out of, related to, or "touch[ed] matters" covered by the two subcontracts and were thus covered by the arbitration agreement. *See Hou–Scape,* 945 S.W.2d at 205. Therefore, we hold that Williams carried its burden of showing that EDS's claims against it fell within the arbitration agreements' scope.

Because Williams carried its initial burden, the burden then shifted to EDS to show that Williams had waived the right to compel arbitration. *See In re Oakwood Mobile Homes,* 987 S.W.2d at 573.

## C. Waiver

■ EDS's primary argument below was that Williams had waived its right to compel arbitration. The trial court's order recited that Williams had waived arbitration by substantially invoking the judicial process to EDS's detriment.

The parties filed unverified arbitration pleadings, attaching the Wal–Mart job subcontract and arbitration agreement, Williams's demand for a jury trial and letter acknowledging payment of the jury fee, a schedule of arbitration fees from the American Arbitration Association's ("AAA") Construction Industry Arbitration Rules, and Williams's second motion for continuance. No testimony was taken at the hearing. The only material offered at the hearing was the Albertsons job subcontract; it was never admitted into evidence, but EDS conceded that that subcontract contained an arbitration clause identical to that in the other subcontract. Additionally, based on the recitation in the order and the arguments of EDS's counsel, it is clear that the trial court took judicial notice of the record and of the materials offered at the hearing and attached to the parties' arbitration pleadings.

The record reveals the following actions by Williams on which EDS relied to argue that Williams had substantially invoked the judicial process and thus waived its right to arbitrate:

- Williams answered EDS's suit.
- About 17 months had passed before Williams moved to compel arbitration, even though Williams had answered within a month of suit's filing.
- Williams engaged in written discovery.[10]
- Williams filed a cross-petition seeking contribution or indemnity. Additionally, after Williams moved for arbitration, Williams's surety on two bonds (Hartford) counterclaimed against EDS.
- Williams demanded and paid the fee for a jury trial.
- Williams moved for continuance two or three times, in part because it alleged that it needed more time for discovery, which motions the trial court granted.
- Williams's counsel filed their vacation letters about two months before moving to compel arbitration.

---

**10.** Although EDS did not explain below what the written discovery was, it claims on appeal that Williams propounded to EDS two sets of interrogatories, two requests for production, and a request for initial disclosures under Rule of Civil Procedure 194. *See* Tex.R. Civ. P. 194.

Even if the above actions substantially invoked the judicial process—a matter that we need not decide—we hold that EDS did not carry its heavy burden of showing that it was prejudiced by those actions. The trial court's order did not recite on what facts it found prejudice. However, EDS argued below that it was prejudiced because

- Williams engaged in "substantial discovery" and allowed other co-defendants to do so, resulting in "multiple" requests for disclosure, interrogatories, and requests for production, which discovery was "expensive, protracted and costly...."
- EDS would have opposed Williams's continuance motions had it known that Williams would seek arbitration.
- Williams's delay in seeking arbitration would "substantially delay the ultimate resolution of the parties' dispute," resulting in EDS's incurring attorney's fees.
- EDS would have to pay arbitration fees.
- Williams received discovery that would not have been available in arbitration.[11]

These prejudice arguments can be summarized as EDS's (1) incurring costs and fees because of discovery, arbitration, and delay and (2) divulging information not available to Williams in arbitration.[12]

Mere delay alone does not suffice to show prejudice. *Pennzoil*, 30 S.W.3d at 499 (noting that generalized protestations about costs of delay, without evidence in support, are insufficient to show prejudice); *see In re Rolland*, 96 S.W.3d 339, 343 (Tex.App.-Austin 2001, orig. proceeding) ("Mere delay in requesting arbitration does not automatically constitute waiver."); *In re Serv. Corp. Int'l*, 85 S.W.3d at 174 ("[A] party does not waive a right to arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice."). The same is true of arbitration expenses. EDS agreed to arbitrate these disputes. Therefore, the payment of arbitration fees *alone* cannot constitute prejudice to EDS, absent a showing, for example, that what EDS had already expended in the present suit equaled or exceeded arbitration fees. Therefore, to show prejudice for the reasons that EDS asserted below, EDS would have had to show how the delay, its fees and costs, the volume of discovery, or the information that Williams obtained in discovery had prejudiced EDS. EDS did not do so.

For example, as for prejudice arising from discovery, the clerk's record contains no copies of discovery requests or responses, and no one introduced them into evidence or described them at the hearing.[13] Knowing the amount and con-

**11.** EDS makes this argument on appeal, but it is unclear whether it raised it below, at which time it argued only that it had "suffered all the disadvantages of litigation ... after going through all this discovery." However, Williams seems to have understood that the content of discovery could result in prejudice to EDS because Williams responded below that the information that had already been exchanged was the same as what could be exchanged in arbitration. Additionally, Williams assumes on appeal that EDS preserved this argument and that it was before served this argument and that it was before the trial court. Therefore, we also assume that this argument was before the trial court.

**12.** EDS did not explain or present proof of how Williams's other complained-of actions-answering EDS's suit, paying a jury fee, filing vacation letters, and seeking contribution or indemnity from other parties-prejudiced EDS.

**13.** EDS has included a timeline of discovery and other matters and a copy of its answers to one set of interrogatories in an appendix to its brief, but nothing shows that that timeline

tent of discovery is important in determining prejudice because "when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice." *In re Bruce Terminix*, 988 S.W.2d at 704; *see In re Nasr*, 50 S.W.3d at 27 n. 3 (noting that mere fact that depositions were taken, when transcribed deposition testimony did not appear in record and when opponents did not otherwise prove how they were prejudiced, did not show prejudice). Knowing the content of written discovery is also important here because the AAA Construction Industry Arbitration Rules, under which the parties agreed to arbitrate, allow the arbitrator to direct "the production of documents and other information" and "the identification of any witnesses to be called"; require the parties to exchange copies of all exhibits; and allow the arbitrator the discretion to order more discovery in "extraordinary cases when the demands of justice require it." AMERICAN ARBITRATION ASSOCIATION, CONSTRUCTION INDUSTRY ARBITRATION RULES, R–24(a), (b), (d), *available at* http://www.adr.org (rules last amended eff. July 1, 2001). EDS did not explain or show whether what it had revealed through discovery would differ from what it could produce at arbitration. *See Pennzoil Co.*, 30 S.W.3d at 500.[14] Furthermore, nothing shows whether EDS would have had to answer the other defendants' discovery of which it complains even had Williams removed itself from the suit early on through arbitration.

As for prejudice resulting from attorney's fees and costs, nothing shows, for example, what fees or costs EDS incurred; how much of those fees or costs were attributable to Williams's complained-of actions, as opposed to the actions of other parties; or whether the fees or costs that EDS had already expended were for matters that could not be used in arbitration. *See Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 593 (Tex. App.-Dallas 1991, writ dism'd w.o.j.) ("[T]he mere fact that [plaintiff] has expended funds for legal fees is insufficient to establish prejudice. In deciding to initiate and prosecute its lawsuit, [plaintiff] voluntarily incurred these expenses and ... costs. It cannot now be argued that these self-inflicted wounds establish prejudice.... *Nothing before us demonstrates that these same expenses would not have been incurred during arbitration, or would not have provided a benefit to [plaintiff] in resolving this dispute in that forum.*") (emphasis added). Additionally, we note that both the AAA rules and the TAA allow or require arbitrators to award attorney's fees if the arbitration agreement provides for fees or if attorney's fees

---

was before the trial court, and neither the interrogatories, nor the timeline or many of the matters listed in it, appear in our record. Also, the timeline does not reveal the content of discovery.

**14.** "Arnold also generally alleges it has been prejudiced by the discovery because '[m]uch of the material sought by Pennzoil would not be available to [it] in an arbitration proceeding.' However, Arnold has not identified the discovery requests it contends are outside the scope of the discovery that could be obtained in arbitration. Nor has Arnold shown that it in fact provided any of this material to Pennzoil. Further, Arnold makes no effort to explain why Pennzoil could not have obtained discovery in an arbitration proceeding, other than to cite to cases that generally state discovery is more limited in arbitration proceedings. The only evidence submitted to the trial court was the AAA Commercial Arbitration Rules, which provide for 'exchange of information' and give the arbitrator discretion 'to arrange for the production of relevant documents and other evidence' before the arbitration." *See Pennzoil Co.*, 30 S.W.3d at 500; *see id.* at 501 (Hardberger, C.J., concurring).

could be recovered in court for the arbitrated claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.048(c)(1), (2) (Vernon Supp.2003); AMERICAN ARBITRATION ASSOCIATION, CONSTRUCTION INDUSTRY ARBITRATION RULES, R–46(c), *available at* http:// www.adr.org (rules last amended eff. July 1, 2001). Here, both subcontracts provided that the prevailing party, in a lawsuit or an arbitration relating to the subcontracts, "shall be entitled to recover his reasonable attorney's fees and costs," and attorney's fees would in any event be recoverable in arbitration for contract-breach claims. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997); *id.* § 171.048(c)(2); AAA Rules R–46(c).

If the trial court's record had revealed matters adequately supporting EDS's claims of prejudice, the court's having taken judicial notice of its record could have sufficed. *See Marble Slab Creamery, Inc. v. Wesic, Inc.*, 823 S.W.2d 436, 439 (Tex. App.-Houston [14th Dist.] 1992, no writ)

(noting that trial court's taking judicial notice of application to compel, opponent's response, and record of case sufficed to provide "ample evidence" supporting waiver conclusion because same subject matter and parties involved). But the record did not contain information adequately showing prejudice. And EDS put on no other evidence—by affidavit, testimony, or otherwise—of prejudice resulting to it from Williams's complained-of actions.

Accordingly, we hold that EDS failed to carry its heavy burden of showing actual prejudice because it offered no evidence in support. Waiver was EDS's sole defense to Williams's arbitration motion. Therefore, regardless of what standard of review applies to the determination of prejudice, the trial court erred in denying Williams's motion to compel arbitration. Given the state of the record, none of the cases on which EDS relies requires a contrary holding.[15]

**15.** For example, in *Lerner,* the record contained copies of the two sets of interrogatories and eight requests for production that the defendant had propounded to the plaintiff and also of the plaintiff's answers to that discovery. 856 S.W.2d at 495; *see former* TEX.R. CIV. P. 167(1)(e), 168, 169(1) (requiring requests for production and admission and interrogatories, and responses thereto, to be filed with court) (repealed eff. Jan. 1, 1999). Accordingly, the appellate court had sufficient material to conclude that the discovery was "extensive" and would be "unavailable in arbitration proceedings." *Lerner,* 856 S.W.2d at 495. In contrast, the record before us does not show what discovery was served or answered, most likely because the current rules do not generally require that parties' discovery requests and responses be filed, although EDS could have offered them in opposition to arbitration. *See* TEX.R. CIV P. 191.4(a), (c). Additionally, unlike here, the defendant in *Lerner* had counterclaimed against the plaintiff. *Lerner,* 856 S.W.2d at 495. In *Marble Slab Creamery,* the applicant for arbitration was *the plaintiff,* which, before moving for arbitration, had entered into an agreed temporary injunction against the defendant, had "actively prosecuted" its suit, had allowed the defendant to file counter-claims and third-party claims, had allowed the defendant to answer "extensive" discovery and to participate in depositions, and had participated in mediation. 823 S.W.2d at 437–39. Again, the record of which the trial court took judicial notice would have included copies of discovery requests and responses under the rules effective at that time. *Id.* at 439; *see former* TEX.R. CIV. P. 167(1)(e), 168, 169(1) (repealed eff. Jan. 1, 1999). The appellate court would thus have had sufficient materials to conclude from the record that the arbitration opponent had been prejudiced. *Marble Slab Creamery,* 823 S.W.2d at 437–39. In *Sedillo,* the plaintiff was forced to hire an attorney, and thus must have incurred attorney's fees, to preserve her claims during the pendency of a bankruptcy proceeding that the defendant had brought in bad faith. 5 S.W.3d at 829. Additionally, the defendant had counterclaimed against the plaintiff. *Id.* at 826. Neither of those things happened here.

Accordingly, we sustain Williams's sole issue.

## Conclusion

We reverse the order and remand the cause with instructions for the trial court to compel arbitration of EDS's claims on which Williams sought to compel arbitration.