Opinion issued
May 7, 2010

 

 

 



 

 

 

 

 

 








 

In The

Court of Appeals

For The

First District of Texas

 



 

NO. 01-09-00475-CV

 



 

IN RE MULTIFUELS, L.P., Relator

 

 



Original Proceeding on Petition for Writ of Mandamus

 

 



MEMORANDUM 
OPINION

 



By petition for writ of mandamus, relator, Multifuels,
L.P., challenges the trial court’s[1]
May 15, 2009 order denying arbitration.  Because
the claims in the underlying suit are within the scope of the arbitration
agreement and because the real party in interest did not carry its burden to
show waiver, we conditionally grant the
petition for writ of mandamus.

Background

          Jesse Arriaga, the real party in interest, began
working for relator, Multifuels, in 2002 without a written employment
agreement. In 2003, Arriaga signed an arbitration agreement that identified
covered claims and excluded claims and read, in relevant part

Claims Covered by the Agreement

 

The Company and I mutually consent to the resolution
by arbitration of all claims or controversies (“claims”), past, present or
future, whether or not arising out of my application for employment,
employment, or the termination of my employment that the Company may have
against me or that I may have against any of the following: (1) the Company,
(2) its officers, directors, employees, or agents in their capacity as such or
otherwise, (3) the Company’s parent, subsidiary, and affiliated entities, (4)
the benefit plans or the plans’ sponsors, fiduciaries, administrators,
affiliates, and agents, and/or (5) all successors and assigns of any of them.

 

The only claims that are arbitrable are those that, in
the absence of this Agreement, would have been justiciable under applicable
state or federal law.  The claims covered
by this Agreement include, but are not limited to: claims for wages or other
compensation due; claims for breach of any contract or covenant (express or
implied); tort claims; claims for discrimination (including, but not limited to
race, sex, sexual harassment, religion, national origin, age, marital status,
medical condition, handicap or disability) work-related illnesses or injuries;
claims for benefits (except claims under an employee benefit or pension plan
that either (1) specifies that its claims procedure shall culminate in an arbitration
procedure different from this one, or (2) is underwritten by a commercial
insurer which decides claims); and claims for violation of any federal , state
or other governmental law, statute, regulation, or ordinance, except claims
excluded in the section of this Agreement entitled “Claims Not Covered by the
Agreement.”

 

Except as otherwise provided in this Agreement, both
the Company and I agree that neither of us shall initiate or prosecute any
lawsuit or administrative action (other than an administrative charge of
discrimination to the Equal Employment Opportunity commission, or a similar
fair employment practices agency, or an administrative charge within the
jurisdiction of the National Labor Relations Board) in any way related to any
claim covered by this Agreement.

 

          Claims Not Covered by the Agreement

 

Claims I may have for unemployment compensation
benefits or workers’ compensation benefits are not covered by this Agreement.  Also
not covered are claims for injunctive
and/or other equitable relief for unfair competition and/or the
use and/or unauthorized disclosure of trade secrets or confidential
information, as to which either party may seek and obtain relief from a court
of competent jurisdiction.

 

That same year, Arriaga began working on a gas-storage-site project,
called the Freebird Gas Storage Project. 
Multifuels later fired Arriaga, and Arriaga then made demands to Multifuels
for payment of more than one million dollars in bonuses that he asserted were owed to him for
work on the Free Bird Gas Storage Project.  According to Multifuels, after his discharge, Arriaga made
disparaging and false statements to third parties about Multifuels’ economic
interests and disclosed confidential information and/or trade secrets to
Multifuels’ competitors.   

On December 16, 2008, Multifuels sued Arriaga for
business disparagement, breach of fiduciary duty, a declaratory judgment that
there is no enforceable contract between Multifuels and Arriaga and by which it
owed Arriaga money, and a declaration that Multifuels had no obligation to pay
Arriaga any additional monies for his work for Multifuels.  Multifuels alleged that it had suffered
pecuniary loss from the business disparagement and, in its prayer, sought
actual and punitive damages from Arriaga. 
It also sought temporary and permanent injunctive relief to stop Arriaga
from disclosing trade secrets or confidential information.  

          On
February 2, 2009, Arriaga answered and countersued for breach of contract,
quantum meruit, promissory estoppel, and fraudulent inducement relating to the unpaid
bonuses that Arriaga contends Multifuels owes him. 

          The day after filing suit, on December 17, 2008,
Multifuels filed a motion for expedited discovery to prepare for the temporary
injunction hearing.  Multifuels sought a
deposition of Arriaga and others with knowledge of relevant facts and numerous
documents relating to Arriaga’s actions and communication from the time of his
termination forward.  The record on
mandamus does not reflect the trial court’s ruling on this motion, but
Multifuels, in its reply, says that it was denied.  According to Arriaga, in an effort to avoid
unnecessary litigation, he agreed to the temporary injunction, agreed to
present himself for deposition in an expedited fashion, and agreed to provide
counsel with requested documents prior to the deposition, while Multifuels agreed
to provide dates for the deposition of Multifuels’s principal, Randall Gibbs.         

          On
February 6, 2009, the trial court issued an “Agreed Temporary Injunction”
restricting Arriaga from disclosing trade secrets or confidential information
belonging to Multifuels and which set the case for trial on July 20, 2009.  Arriaga’s deposition was taken February 24,
2009, and the record indicates that Multifuels tendered responses to requests
for production that included requests
for documents relating to claims that Multifuels would later contend were
subject to arbitration. The record also suggests that Arriaga responded
to Multifuels’s interrogatories, additional requests for production, and a
request for disclosure.  The mandamus
record does not contain any of Multifuel’s discovery requests or Arriaga’s responses,[2] other than some documents which Arriaga apparently
sent as responses to some requests for production. 

          On
March 16, 2008, after Arriaga had been deposed, and after he had responded to
Multifuels’s interrogatories and requests for disclosure and production,
Arriaga sent his own interrogatories and requests for production to
Multifuels.  

          On
April 13, 2009, Multifuels sent Arriaga a letter demanding arbitration on “its
claims against . . . Arriaga,” and referenced its claims for declaratory relief
and Arriaga’s claims for breach of contract. 
The letter did not mention
Multifuels’s claims of pecuniary loss from the alleged business disparagement
or its request for judgment in its favor for actual and punitive damages
against Arriaga. 

          On
April 16, 2009, Multifuels filed a motion to compel arbitration and to abate
the case.  On April 20, 2009, Multifuels
responded to Arriaga’s discovery requests, objecting to each interrogatory and
request for production on the ground that the claims were subject to
arbitration. Multifuels asserted that it had only found the arbitration
agreement on March 27, 2009, while searching its records to respond to
Arriaga’s request for production of documents. 

          In its motion to compel arbitration, Multifuels stated:

 

1.  This is a
suit seeking declaratory relief that (1) there is no enforceable contract by
and between the Company and Jesse Arriaga . . . by which
Arriaga is owed any money and (2) the Company has no obligation to pay Arriaga
any additional monies in connection with his employment at the Company.  Arriaga has filed a counter-claim alleging
breach of contract and generally that he is owed money in connection with his
employment at the Company.

 

          . . . .

 

2. . . . The Arbitration Agreement provides that
claims for wages or other compensation due and claims for breach of any
contract or covenant shall be determined by binding arbitration. . . .

          

          .
. . .

 

2. [sic] The claims which are the subject matter of
this lawsuit fall within the scope of the Arbitration Agreement.  Arriaga has admitted as much in his Original
Answer and Original Counterclaim. 
Accordingly, Multifuels requests this Court to order this matter to arbitration
pursuant to the Arbitration Agreement.

          Multifuels’s
request omitted any mention of its noncontractual claims, both (1) the request
for injunctive relief related to disclosure of confidential information and
trade secrets[3] and (2)
its claim for business disparagement for which it asserted a pecuniary loss and
asked for actual and punitive damages.  It
sought to abate the suit during the pendency of the arbitration proceedings. 

          Arriaga
opposed the motion to compel.  He noted
that Multifuels had sought more than just the declaratory judgment asserted in
the motion to compel, pointing out that Multifuels has also pleaded business
disparagement and breach-of- fiduciary duties causes of action, in addition to
requesting injunctive relief.  He also
noted that Multifuels had filed a motion for expedited discovery and related
what had occurred up until that point in the suit.  Arriaga argued that Multifuels had waived its
right to arbitration.  He asserted that
Multifuels substantially invoked the judicial process by: (a) filing suit, (b)
seeking a temporary injunction; and (3) “forcing Arriaga to: give his
deposition; respond to interrogatories; and respond to requests for discovery.”
He asserted that he had suffered prejudice “because Multifuels used the lawsuit
to gain access to discovery” and “because he was forced to answer
interrogatories” which were “a kind of discovery that [was] not available under
the arbitration agreement.” He also asked for sanctions against Multifuels. 

          Multifuels
replied to Arriaga’s response to the motion to compel arbitration, arguing,
that as a matter of law, the actions Multifuels took in the underlying case did
not constitute waiver and that Arriaga had not demonstrated prejudice.
Multifuels asserted that a limited amount of discovery had taken place and
noted that it had moved for arbitration after only about 10 weeks of
litigation.  Multifuels contended that it
had only issued one set of interrogatories containing only 8 questions and had
only taken one deposition.[4]  

          After
a hearing, the trial court denied Multifuels motion to compel arbitration,
without any explanation or comment in its order.  

Multifuels filed a petition for writ of mandamus,[5]  arguing that the trial court abused its
discretion in denying the motion to compel arbitration based on waiver.  Multifuels asserts that the three actions
that Arriaga presented to the trial court to prove that Multifuels allegedly
invoked the judicial process (filing suit, securing a temporary injunction, and
conducting “limited” discovery[6])
were insufficient as a matter of law to prove waiver and that Arriaga did not
prove prejudice because he provided no affidavits, no witness testimony, and no
evidence of the allegedly prejudicial discovery requests or his deposition
transcript.  Multifuels also argued that
Arriaga suffered no prejudice because the discovery conducted by Multifuels was
also available in the arbitration proceeding because the Arbitration Agreement
allowed for the parties to take the deposition of one individual and any expert
witness, the right to propound requests for document production and “additional
discovery may be had only where the arbitrator selected so orders.”  Multifuels noted that the arbitrator had the
authority to order interrogatories and so contended that Arriaga was not
prejudiced by Multifuels having received his responses to their discovery in
the litigation.

          Multifuels filed a record on mandamus that included: 

 

          (1)     Multifuels’s
original and amended petition;

          (2)     Arriaga’s
answer and counterpetition;

          (3)     the
Agreed Temporary Injunction;

          (4)     Multifuels’s
motion to compel arbitration and for abatement;

          (5)     Arriaga’s
response in opposition to the motion to compel; and

          (6)     Multifuel’s
reply to Arriaga’s response.

          The record on mandamus does not include a reporter’s
record from the hearing on Multifuels’ motion to compel arbitration nor did it
include any of the discovery requests by Multifuels or responses by
Arriaga.  It also does not include a full
transcript of the deposition of Arriaga, though it does provide a few pages of
the deposition.

          We
ordered Arriaga to respond.  He did so
and also filed a supplemental record.[7]  In his response, Arriaga contended that the
discovery conducted by Multifuels before seeking arbitration was “substantially
complete” given the nature of the case and its level of complexity.  He argued that Multifuels’s actions as a
whole (filing suit, securing a temporary injunction, and “conducting
substantially complete discovery”) were sufficient to substantially invoke the
judicial process.  He also pointed out
that, unlike cases relied upon by Multifuels, Multifuels was the plaintiff
in this litigation, sought its relief from the court system, conducted and
received the benefit of discovery, and only then moved for arbitration, before
Arriaga could receive the benefit of discovery. 
Arriaga further argued that he was prejudiced by Multifuels’s
substantial completion of discovery and asserted that Multifuels could not have
received a similar benefit in arbitration because the agreement did not provide
for interrogatories as a matter of right (but only as a matter of discretion by
the arbitrator).   Arriaga noted that
Multifuels, in its motion for a stay of discovery in this Court, had stated
that “different rules may be employed” in the trial system than in arbitration.

          The
supplemental record filed by Arriaga included:

          (1)     Multifuels’s motion for expedited discovery;

          (2)     letters
between the parties regarding production requests, including one apparent
response to requests for production that included emails and a power of
attorney and contingent fee contract; and       

 

          (3)     Multifuels’s
emergency motion to stay discovery filed in this Court.

 

          It
did not include the discovery that Arriaga answered before Multifuels sought
arbitration, other than the portions of responses to requests for production
mentioned above, nor did it include a copy of the deposition given by
Arriaga.  

          In
its reply to Arriaga’s response, Multifuels asserted that it was Arriaga’s
responsibility to provide evidence to the trial court that he was prejudiced
and that Arriaga did not do so below and did not do so on mandamus.  It also asserted that if each of the three
bases which Arriaga contended were individually insufficient to constitute
waiver, then they could not, considered all together be sufficient for waiver
because “the whole cannot be greater than the sum of its parts.”

Mandamus Standard of Review

A.  
   Mandamus as a Remedy

The arbitration agreement that Arriaga signed stated,
“I understand and agree that the company is engaged in transactions involving
interstate commerce and that my assignment/employment with the Company involves
such commerce.”  Therefore, the Federal
Arbitration Act (“the FAA”) applies to this case.  See 9
U.S.C. § 2 (2006).   For orders
entered prior to September 1, 2009,[8] “[a]
party denied the right to arbitrate under the Federal Arbitration Act by a
state court has no adequate remedy by appeal and is entitled to mandamus relief
to correct a clear abuse of discretion.” 
In re L & L Kempwood Assocs., L.P., 9 S.W.3d 125, 128 (Tex.
1999) (per curiam). 

B.      Clear
Abuse of Discretion

 

          We review the denial of a motion to
compel arbitration for abuse of discretion. 
In re D. Wilson Constr. Co., 196 S.W.3d 774, 780 (Tex. 2006)
(original proceeding); Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992)
(orig. proceeding).  A trial court abuses
its discretion when it acts arbitrarily or unreasonably and without reference
to any guiding rules or principles.  See
Walker, 827 S.W.2d at 839, 840. 
Because a trial court has no discretion in determining what the law is,
which law governs, or how to apply the law, we review this category of
discretionary rulings de novo.  See
id. at 840. 

Applicability of the Arbitration Agreement

          When a party asserts a right to
arbitrate under the FAA, the question of whether the dispute is subject to
arbitration is determined under federal law. 
Prudential Secs. Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex.
1995).  As a matter of federal law, any
doubts concerning the scope of arbitrable issues are resolved in favor of
arbitration, whether pertaining to the construction of the contract or a
defense to arbitration.  See In re
Serv. Corp. Int’l, 85 S.W.3d 171, 174 (Tex. 2002).  “In determining whether to compel
arbitration, a court must decide two issues: (1) whether a valid, enforceable
arbitration agreement exists and, (2) if so, whether the claims asserted fall
within the scope of the agreement.”  In
re Tenet Healthcare, Ltd., 84 S.W.3d 760, 765 (Tex. App.—Houston [1st
Dist.] 2002, orig. proceeding) (citing In re Oakwood Mobile Homes,
Inc., 987 S.W.2d 571, 573 (Tex. 1999)). 
A court has no discretion and must compel arbitration if the answer to
both questions is affirmative.  In re
Tenet Healthcare, Ltd., 84 S.W.3d at 765. 
“An order to arbitrate should not be denied unless it can be said with
positive assurance that the arbitration clause is not susceptible of an
interpretation that covers the asserted dispute.”  Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202,
205 (Tex. App.—Houston [1st Dist.] 1997, no writ) (citing United
Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83, 80
S. Ct. 1347, 1353 (1960)). We review de
novo whether an enforceable agreement to arbitrate exists.  In re Kellogg Brown & Root, 80
S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding).  To determine if a claim falls within the scope
of an arbitration agreement, we focus on the facts alleged, not the causes of
action asserted.  Hou-Scape, 945
S.W.2d at 205.

           Reviewing the record, we note that, while
Multifuels’s claim for injunctive relief based on disclosure of trade secrets
was not arbitrable, under the plain language of the agreement, the remaining
factual allegations pertaining to compensation that Arriaga contended
Multifuels owed him as a result of his employment were clearly within the scope
of the arbitration agreement’s plain language, as were Arriaga’s claims against
Multifuels, and Multifuels’s business tort claims for which it sought actual
and punitive damages. 
Multifuels’ motion to compel arbitration also speaks only of arbitrable
claims.  We conclude that the claims on
which Multifuels sought arbitration were subject to the arbitration agreement.

We further note that Arriaga did not
contest the validity and applicability of the arbitration agreement below.  His only argument was that Multifuels had
waived its right to compel arbitration. 
On mandamus, likewise, Arriaga limits his argument to waiver of
arbitration.  We turn then to analyzing
that issue. 

The Affirmative Defense of Waiver

In a mandamus review, generally the
relator carries the burden to show that the trial court clearly abused its
discretion.  See Tex. R. App. P.
52.  The real party in interest need not
even file a response.  Tex. R. App. P. 52.4 (“Any party may
file a response to the petition, but it is not mandatory.”). 
However, a party opposing arbitration based on the affirmative defense
of waiver has the burden to prove waiver.  See, e.g., In re Fleetwood
Homes, L.P., 257 S.W.3d 692, 695 (Tex. 2008) (original proceeding)
(“Because [real party in interest] has failed to show that Fleetwood waived its
contractual right to arbitration, we conditionally grant Fleetwood’s petition
for writ of mandamus and direct the trial court to compel arbitration.”).  

A.      Waiver of right to arbitration

 

          1.       Waiver
is a Question of Law

 








          Whether
a party has waived its right to arbitration is a question of law, which we
review de novo.  In re Fleetwood Homes,
257 S.W.3d at 694; Perry Homes v. Cull, 258 S.W.3d 580, 591–93 (Tex.
2008); Williams Indus., Inc. v. Earth Dev. Sys. Corp., 110 S.W.3d 131,
135 & n. 4 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (explaining waiver
under Texas General Arbitration Act, but explaining that “standard for
determining waiver of the right to arbitration is the same under both the Texas
General Arbitration Act and the Federal Arbitration Act.”).  There exists a strong presumption against waiver
in the law and “[a]ny doubts regarding waiver are resolved in favor of
arbitration.”  In re D. Wilson Constr.,
196 S.W.3d at 783; see also Perry Homes, 258 S.W.3d at 589–90; Williams
Indus., 110 S.W.3d at 135 (citing In re Bruce Terminix, 988 S.W.2d
702, 705 (Tex. 1998)).

 

          2.       Proof
of waiver

 

Waiver of arbitration rights may be
expressed or implied.  In re Citigroup
Global Mkts., 258 S.W.3d 623, 626 (Tex. 2008).  Express waiver occurs when a party
affirmatively indicates that it wishes to litigate the dispute.  See id.  Implied waiver occurs when the party “substantially
invoke[es] the judicial process to the other party’s detriment.”  Id. at 625 (quoting Perry Homes,
258 S.W.3d at 589–90).  The party who
asserts waiver of an arbitration clause bears a heavy burden.  EZ Pawn Corp. v. Mancias, 934 S.W.2d
87, 90 (Tex. 1996).

A determination of whether waiver has
occurred depends on an evaluation of the totality of the circumstances of the
particular case.  Perry Homes, 258
S.W.3d at 591–92.  The Perry Homes court
identified several nonexclusive factors that it and the federal courts have
used when considering a question of waiver, some pertaining to substantial
invocation of the litigation process and others to actual prejudice: (1)
whether the movant was plaintiff (who chose to file in court) or defendant (who
merely responded); (2) how long the movant delayed before seeking arbitration;
(3) whether the movant knew of the arbitration clause all along; (4) how much
pretrial activity related to the merits rather than arbitrability or jurisdiction;
(5) how much time and expense has been incurred in litigation; (6) whether the
movant sought or opposed arbitration earlier in the case; (7) what discovery
would be unavailable in arbitration; (8) whether activity in court would be
duplicated in arbitration; (9) when the case was to be tried; (10) when the
movant knew of the arbitration clause; (11) how much discovery had been
conducted; (12) who initiated the discovery that had been conducted; (13)
whether the discovery that had been conducted related to the merits rather than
arbitrability or standing; (14) how much of the discovery would be useful in
arbitration; and (15) whether the movant sought judgment on the merits.  Perry Homes, 258 S.W.3d at 591–92.

How much litigation conduct will be
“substantial” depends on the context of the case.  Id. Parties that “conduct full
discovery, file motions going to the merits, and seek arbitration only on the
eve of trial” may waive contractual rights to arbitration.  In re Vestra Ins. Group, 192 S.W.3d
758, 764 (Tex. 2006).  But the Perry
Homes court recognized that sometimes only two of those three circumstances
have been met and that how much discovery is “full discovery” depends on the
context of the case.  See Perry Homes,
258 S.W.3d at 590, 593.  This Court has
held that “[s]ubstantially invoking the judicial process can occur when the
proponent of arbitration actively tried, but failed, to achieve a satisfactory
result in litigation before turning to arbitration,” and that a party
substantially invokes the judicial process when, after the lawsuit is filed, he
takes specific and deliberate actions that are inconsistent with the right to
arbitrate, such as moving for summary judgment or seeking a final resolution of
the dispute.  Williams Indus., 110
S.W.3d at 135.   

          A
party opposing arbitration must also show detriment, i.e., that he has
suffered actual harm as a result of the moving party’s substantial invocation
of the judicial process.  See id.  Detriment means “inherent unfairness caused
by ‘a party’s attempt to have it both ways by switching between litigation and
arbitration to its own advantage,’” In re
Fleetwood Homes, 257 S.W.3d
at 694 (quoting Perry Homes, 258 S.W.3d at 597), that is, “the inherent
unfairness in terms of delay, expense, or damage to a party’s legal position”
when it is first forced by the other party to litigate an issue, and later
required to arbitrate the same issue.  Perry Homes, 258 S.W.3d at 597.  “The prejudice on which courts focus includes
such things as (1) the movant’s access to information that is not discoverable
in arbitration and (2) the opponent’s incurring costs and fees due to the
movant’s actions or delay.” Williams Indus., 110 S.W.3d at 135.  Showing prejudice is generally an evidentiary
burden which is placed on the party opposing the arbitration.  Id. 

          3.       Multifuels’s
Actions

 

Before moving to compel arbitration,
Multifuels: (1) filed suit for declaratory judgment on a contract claim,
injunctive relief on a trade-secrets-disclosure claim, and for actual and punitive
damages on business-tort claims; (2) moved for expedited discovery and
deposition of Arriaga on the nonarbitrable claims; (3) served Arriaga with
interrogatories and requests for production and disclosure, for which it
received responses; (4) wrote to Arriaga’s attorney about document production
on Arriaga’s claims; (4) filed an amended original petition; (5) deposed
Arriaga; and (7) demanded arbitration by letter sent to Arriaga’s counsel.  Contemporaneous with its motion to compel
arbitration, Multifuels responded to Arriaga’s first set of interrogatories and
first request for production, but Multifuels objected to each question or
request, stating that the claims were subject to arbitration.  

B.      Proof
of waiver and the adequacy of the record

           Review of the mandamus record reveals that neither
the record filed by Multifuels nor the supplemental record filed by Arriaga
include a transcript of the hearing on the motion to compel arbitration, a
complete transcript of Arriaga’s deposition, the complete discovery requested
by Multifuels, or Arriaga’s complete responses to Multifuels’ discovery
requests.  The mandamus record shows that
Multifuels filed suit, deposed Arriaga, and sought and received some written
discovery, but does not show how much discovery remained to be completed, how
much the discovery already conducted pertained to the merits or to issues of
arbitrability or the non-arbitrable claims, or even how much discovery had been
conducted.  However, as Multifuels asserts
that it did not discover the arbitration agreement until after discovery had
been undertaken, it is reasonable to assume that the discovery requests
pertained to the merits of the case.  The
record does not establish how many questions were posed in the interrogatories,
how many requests for production were made, or how many documents were sought.[10]
It also does not show what answers were given, or what documents produced
(apart from the ones noted previously), or how what was answered or given would
have prejudiced Arriaga.  The record and
arguments of both parties suggest that Multifuels did not seek additional
discovery—and actually sought to stay discovery in the trial court—after it
demanded and then moved to compel arbitration, albeit after Arriaga had already
complied with Multifuels’s discovery and deposition requests.  

Given the relative simplicity of the
case, the fact that Multifuels instigated
the litigation and immediately sought and received discovery (including Arriaga’s
deposition)—some of which, at least, was clearly related to the merits of
Arriaga’s claims—in a short period of time, lends support to the trial court’s
conclusion that the “totality of the circumstances” demonstrated that
Multifuels had substantially invoked the judicial process.  The trial court was not required to believe
Multifuels’s assertion that it did not know about the arbitration agreement—an
agreement which was apparently created by Multifuels and would have presumably
been in Arriaga’s employment file.  See In re Yamaha Corp., No.
09-09-00313-CV, 2009 WL 2051661, at *1 (Tex. App.—Beaumont, July 16, 2009) (orig.
proceeding [mandamus denied]) (memo. op.) (holding that, given nature of
document, trial court could have reasonably disbelieved relator who asserted
that it was not aware of arbitration clause until year after litigation
began).  Moreover, like a recent case
decided by this Court in which we affirmed a trial court’s decision to refuse
to compel arbitration, Multifuels sought arbitration only after it had
benefitted from receiving discovery from Arriaga and when its own discovery to
Arriaga was due.  See Okorafor v.
Uncle Sam & Assocs., Inc., 295 S.W.3d 27, 40 (Tex. App.—Houston [1st
Dist.] 2009, pet. denied).   

However, even if the “totality of the
circumstances” demonstrates that Multifuels substantially invoked the judicial
process in this case, thus meeting the first requirement of waiver under Perry Homes, this alone would not be
sufficient for the trial court to have found waiver.  There must also have been evidence that Arriaga
suffered actual harm as a result of Multifuels’
use of the judicial process. See In re
Bruce Terminix, 988 S.W.2d
at 704 (“Even substantially invoking the judicial process does not waive a
party’s arbitration rights unless the opposing party proves that it suffered
prejudice as a result [of the invocation of the judicial process]”).  In other words, Arriaga must have been harmed in
terms of delay, expenses, or damage to his legal position as a result of being
“forced” to be in the judicial system litigating the dispute for four months
instead of being in arbitration from the start.  See id.;
Perry Homes, 258 S.W.3d at 597; Williams
Indus., 110 S.W.3d at 135.

Arriaga argues that he was prejudiced
because he responded to discovery requests which are not necessarily available
in arbitration.[11]  However, the record of does not include a complete
copy of the discovery requests or Arriaga’s responses to them, or a copy of his
deposition.  Multifuels asserts that
Arriaga presented no evidence of prejudice to the trial court apart from the
attachments to his response in opposition to the motion to compel—which do not
include a copy of the discovery requests or Arriaga’s responses or a copy of
the deposition.  Arriaga does not
contradict this assertion.  Instead, he
states that he presented the trial court with “ample evidence,” but he does not
identify any particular evidence that he presented to the trial court, nor does
he cite to any evidence in the record before us as being given to the trial
court.  Arriaga argues only that the
trial court was entitled to take judicial notice of its own records and should
be presumed to have done so.  He does not
assert that the trial court took judicial notice of any particular document in
the record.  We do not have a copy of the
trial court’s record before us and so we do not know what documents the trial
court could have taken judicial notice of, if it so did.  However, because Texas Rule of Civil
Procedure 191.4 prohibits the filing of discovery requests, responses, or
documents and tangible things produced in discovery, the record should not have
contained any of those items apart from any attached to other motions, such as
Arriaga’s motion in opposition to the motion to compel.  See Tex. R. Civ. Pro. 191.4(a)(1), (2),
(3), (b)(2), (c)(2).  Therefore, in light
of Arriaga’s response, we take as true Multifuel’s assertion that the only
evidence that Arriaga offered to the trial court was the documents attached to Arriaga’s
response in opposition to the motion to compel, which included a cover letter
and a copy of the arbitration agreement, a fax cover sheet and Multifuels’
answers to Arriaga’s interrogatories and requests for production.[12]  Thus neither the discovery requests to Arriaga
from Multifuels, nor the responses by Arriaga to Multifuels, were before the
trial court when it made its ruling.

“Knowing the amount and content of
discovery is important in determining prejudice because ‘when only a minimal
amount of discovery has been conducted, which may also be useful for the
purpose of arbitration, the court should not ordinarily infer waiver based upon
prejudice.’” Williams Indus., 110 S.W.3d at 139–40 (quoting In re Bruce Terminix, 988
S.W.2d at 704).  Without a copy of the discovery
requests to Arriaga and Arriaga’s responses, the trial court could not ascertain
whether by Arriaga’s responses provided Multifuels “information that is not
discoverable in arbitration.”[13] See Williams Indus., 110 S.W.3d at 135.  The trial court could determine that Arriaga
had not gained anything from discovery in the litigation because Multifuels had
not responded to Arriaga’s discovery requests, but the trial court did not have
any evidence before it that proved that Arriaga was harmed in terms of delay,
expenses, or damage to his legal position by responding to Multifuels’s interrogatories.  See
Perry Homes, 258 S.W.3d at 597; In re
Bruce Terminix, 988 S.W.2d
at 704; Williams Indus., 110 S.W.3d at 135.  The scant evidence actually
presented to the trial court did not include any information demonstrating harm
to Arriaga arising from delay, expenses, or damage to Arriaga’s legal position.  On this record, Arriaga did not meet his
burden to prove that he suffered actual harm as a result of Multifuels’ use of the judicial process.  See
Perry Homes, 258 S.W.3d at 597; In re
Bruce Terminix, 988 S.W.2d
at 704; Williams Indus., 110 S.W.3d at 135.  

Based on the totality of the
circumstances, we hold that Arriaga did not meet his burden below to show that
Multifuels waived the arbitration agreement. 
See Perry Homes, 258 S.W.3d at
593; In re Bruce Terminix, 988 S.W.2d
at 705.  Accordingly, Multifuels has met
its burden on mandamus to prove that the trial court abused its discretion denying
Multifuel’s motion to compel arbitration.




Conclusion

          We
conditionally grant relator’s petition for writ of mandamus and we
direct the trial court to vacate its May 15, 2009 order and grant relator’s
motion to compel arbitration.  We are
confident the trial court will promptly comply, and our writ will issue only if
it does not.

 

 

 

 

                                                          Laura
Carter Higley

                                                          Justice

 

 Panel consists of Justices Jennings, Higley,
and Sharp.

Justice Sharp, dissenting
with opinion to follow.











[1]                     
The underlying case is
Multifuels, L.P. v. Jesse Arriaga,
No. 2008-73857, in the 11th District Court of Harris County, Texas, the
Honorable Mike Miller, presiding.  





[2]               Multifuels
contends that these documents were also not filed with the trial court nor
shown to the trial court.  





[3]               The
request for injunctive relief was not arbitrable under the arbitration
agreement and was functionally resolved by the issuance of the temporary
injunction.





[4]               The
record on mandamus does not contain these interrogatories or deposition.  It is clear from the record that there were
also at least 18 requests for production, including requests for documents
related to Arriaga’s counterclaims.

 





[5]               We dismissed Multifuels’ first motion to stay
discovery, and we later denied (J. Sharp, individually) its second “emergency”
motion to stay discovery.

 





[6]               The
term “limited” is Multifuels’s characterization, not Arriaga’s.





[7]               Under
the Rules of Appellate Procedure, Arriaga had the opportunity to supplement the
record to bring forward any evidence that was presented to the trial court but
not included in relator’s record.  Tex. R. App. P. 52.7(b) (“After the
record is filed, relator or any other party to the proceeding may file
additional materials for inclusion in the record.”).  





[8]               See Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (Vernon Supp. 2009) (providing for
interlocutory appeal of order denying motion to compel arbitration under Federal
Arbitration Act); In Re Helix Energy
Solutions Group, Inc., 303 S.W.3d 386, 395 n.7 (Tex. App.—Houston [14th
Dist.] 2010) (original proceeding).





[10]             Multifuels
contends in its petition for writ of mandamus that it served requests for
disclosure, requests for production (33) and interrogatories (8) on Arriaga and
Arriaga responded to “some of the same” and “produced some responsive
documents.”   There is nothing in the
record that actually establishes that that was the total discovery by
Multifuels or what the answers were that it received and how that would affect
the position of the parties or the lawsuit.





[11]             Multifuels erroneously argues that, because the
arbitrator could order
interrogatories and other discovery, Arriaga was not prejudiced by not being
able to receive responses to its discovery requests in the litigation, as
Multifuels had.  This same argument was
rejected by the Texas Supreme Court in Perry Homes, the court noting that arbitrators
have almost unbridled discretion, so no one could predict what they could do in
advance.  Perry Homes v. Cull, 258
S.W.3d 580, 599 (Tex. 2008). 
Multifuels’s comments in its motion to stay discovery pending the
mandamus (remarking that the rules as to discovery might be different in the
courts than in arbitration) also undermine its arguments that Arriaga could not
show prejudice because he could receive discovery in arbitration.  See
also Citizens Nat’l Bank v. Bryce, 271 S.W.3d 347, 359 (Tex. App.—Tyler
2008, no pet.) (interlocutory appeal and orig. proceeding [mandamus denied]).  





[12]             Arriaga
has provided a supplemental mandamus record which includes some correspondence
between the attorneys and some apparent responses by Arriaga to request for production
by Multifuels.  Multifuels asserts that
Arriaga did not file or present those documents to the trial court and so they
were not part of the record in the case. 
Arriaga has not disputed this assertion and has not asserted that he
presented those documents to the trial court. 
Therefore we may not consider those documents in determining whether the
trial court abused its discretion in finding waiver.  See
Sabine OffShore Serv., Inc. v. City of Port Arthur, 595 S.W.2d 840, 841
(Tex. 1979) (original proceeding) (on mandamus, appellate court could not
consider evidence that was not part of trial-court record, except to decide its
own jurisdiction); Methodist Hosps. v.
Tall, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) (“It is
axiomatic that an appellate court reviews actions of a trial court based on the
materials before the trial court at the time it acted.”) However we note that,
even if we could consider such documents, they do not include the
interrogatories or responses that Arriaga claims were prejudicial, and what is
in the supplemental record is insufficient to establish actual harm. 

 





[13]             For
this reason, this case is distinguishable from our decision in Okorafor.  The
record before us in that case established that, by answering the defendants’
discovery requests, the plaintiff had provided the defendants with the benefit
of discovery relevant to the case on the merits, as well as the defendants’
counterclaims and affirmative defenses, to the extent that the defendants were
“familiar” with the plaintiff’s case on the merits and on the defendants’
counterclaims and affirmative defenses. See Okorafor v. Uncle Sam &
Assocs., Inc., 295 S.W.3d 27, 41 (Tex. App.—Houston [1st Dist.]
2009, pet. denied).   By
contrast, in the case before us, the mandamus record does not establish how
“familiar” Multifuels became with Arriaga’s case from Arriaga’s responses to
discovery—in fact, we do not actually know from this record whether, and to
what extent, Arriaga even fully responded to the requests, whatever they
were.  Without knowing the substance of
the requests, or Arriaga’s responses, we cannot say, on this record, that,
because of Arriaga’s responses to Multifuels’s discovery requests, Multifuels
became so “familiar” with Arriaga’s case on the merits, as was the plaintiff in
Okorafor, so as to make such knowledge prejudicial to Arriaga, or that
such knowledge could not have been obtained in arbitration.  See
Williams Indus., 110 S.W.3d at 135.